UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION<br><br>    Plaintiff,<br><br>vs.<br><br>ELON MUSK<br><br>    Defendant. | No. 1:18-cv-8865-AJN-GWG<br>[rel. 1:18-cv-8947] |

### JOINT SUBMISSION IN SUPPORT OF APPROVAL AND ENTRY OF PROPOSED CONSENT JUDGMENTS

Pursuant to this Court's October 4, 2018 Orders, counsel for Plaintiff United States Securities and Exchange Commission ("SEC") and Defendants Elon Musk and Tesla, Inc. ("Tesla") provide this submission in support of approval and entry of the proposed consent judgments to resolve these civil matters. Because the parties considered the resolution of these two matters together, this submission discusses the appropriateness of both of the two proposed consent judgments.

The parties believe that resolution of these cases consistent with the proposed settlement terms is in the best interest of investors, including Tesla shareholders. We therefore respectfully submit that the Court should accept and enter the proposed consent judgments.

### THE ACTIONS

On September 27 and 29, 2018, the SEC filed complaints against Mr. Musk and Tesla, respectively. *See* Complaint as to Defendant Elon Musk, 1:18-cv-8865-AJN-

GWG, Dkt. No. 1; Complaint as to Defendant Tesla, Inc., 1:18-cv-8947-AJN-GWG, Dkt. No. 1.

Mr. Musk and Tesla did not respond to the SEC complaints prior to these settlements being reached.

## THE PROPOSED SETTLEMENT TERMS

Without admitting or denying the SEC's allegations, Mr. Musk and Tesla have agreed to settle these actions and consent to the entry of the proposed consent judgments. The terms of the settlements were negotiated by Mr. Musk's and Tesla's experienced counsel and approved by the SEC. The proposed consent judgments against Mr. Musk and Tesla would:

(a) permanently enjoin Mr. Musk from violating Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;

(b) permanently enjoin Tesla from violating Rule 13a-15 of the Exchange Act;

(c) order Mr. Musk to pay a civil penalty in the amount of $20,000,000;

(d) order Tesla to pay a civil penalty in the amount of $20,000,000;

(e) order Mr. Musk to comply with undertakings requiring him to resign as Chairman of Tesla's board of directors, certify that he has done so, and comply with mandatory procedures to be adopted by Tesla concerning the oversight and approval of his Tesla-related public statements; and

(f) order Tesla to comply with undertakings, including appointment of a new Chairman and two additional independent directors to its board of directors, establishment of a new board committee responsible for disclosures, implementation of mandatory procedures to oversee and pre-approve Mr. Musk's Tesla-related written communications that reasonably could contain information material to the company or its shareholders, and designation or employment of an experienced securities lawyer whose duties will include enforcement of those procedures.

*See* Consent and Proposed Final Judgment as to Defendant Elon Musk, 1:18-cv-8865-AJN-GWG, Dkt. Nos. 6-1, 6-2; Consent and Proposed Final Judgment as to Defendant Tesla, Inc., 1:18-cv-8947-AJN-GWG, Dkt. Nos. 3-1, 3-2.

## SCOPE OF REVIEW

The use and entry of consent judgments has long been endorsed by the Supreme Court. *See*, *e.g.*, *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971); *Swift & Co. v. United States*, 276 U.S. 311, 324-27 (1928). The Second Circuit has similarly noted that there is a "strong federal policy favoring the approval and enforcement of consent decrees." *SEC v. Wang*, 944 F.2d 80, 85 (1991).

As this Court noted in its Orders, in reviewing a consent judgment in an SEC enforcement case, the district court's role is to determine whether the proposed consent judgment is "fair and reasonable." *SEC v. Citigroup Global Markets, Inc.*, 752 F.3d 285, 294 (2d Cir. 2014). If the consent decree includes an injunction, as is the case here, the Court must also find that "the public interest would not be disserved" by the proposed injunctive relief. *Id.* at 298 (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). As the Second Circuit noted, "[t]he job of determining whether the proposed S.E.C. consent decree best serves the public interest, however, rests squarely with the S.E.C., and its decision merits significant deference." *Id.* at 296. As a result, "[a]bsent a substantial basis in the record for concluding that the proposed consent decree does not meet these requirements, the district court is required to enter the order." *Id.* at 294.

## THE PROPOSED SETTLEMENTS SHOULD BE APPROVED

**Position of the SEC**

The proposed settlements in this case are fair, reasonable, and will serve the interests of the public and investors. As a result, the proposed consent judgments meet the standard set forth by the Second Circuit and should be entered.

First, Mr. Musk has consented to the entry of a judgment that would permanently enjoin him from violating Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Tesla has consented to entry of a judgment that would permanently enjoin it from violating Rule 13a-15 of the Exchange Act. *See* Consent and Proposed Final Judgment as to Defendant Elon Musk, 1:18-cv-8865-AJN-GWG, Dkt. Nos. 6-1, 6-2; Consent and Proposed Final Judgment as to Defendant Tesla, Inc., 1:18-cv-8947-AJN-GWG, Dkt. Nos. 3-1, 3-2.

Section 21(d)(1) of the Exchange Act authorizes the SEC to seek such injunctive relief. 15 U.S.C. § 78u(d)(1). These injunctions benefit investors "by reminding defendants that they must obey the law in the future," *SEC v. Clifton*, 700 F.2d 744, 748 (D.C. Cir. 1983), and enabling the Court to enforce compliance using its contempt power. *See SEC v. Bilzerian*, 112 F. Supp. 2d 12, 16 (D.D.C. 2000) ("The Court has both an inherent and statutory power to enforce compliance with its orders through the remedy of civil contempt."); *see also SEC v. Blinder, Robinson & Co., Inc.*, 855 F.2d 677, 680 (10th Cir. 1988) (endorsing the district court's finding that "the reason for the injunction was the ability of the enforcement agency to come to court and show a violation and to then have available the quick remedy of contempt").

Second, the proposed consent judgments order Mr. Musk and Tesla to pay significant civil penalties in the amount of $20,000,000 each. *See* Consent and Proposed Final Judgment as to Defendant Elon Musk, 1:18-cv-8865-AJN-GWG, Dkt. Nos. 6-1, 6-2; Consent and Proposed Final Judgment as to Defendant Tesla, Inc., 1:18-cv-8947-AJN-GWG, Dkt. Nos. 3-1, 3-2.

Subject to the Court's approval, the SEC intends to distribute these penalties to affected investors. The SEC is authorized to seek, and this Court is empowered to order, civil penalties pursuant to Section 21(d)(3) of the Exchange Act. 15 U.S.C. § 78u(d)(3). Generally, civil penalties serve dual purposes of addressing prior alleged violations and also providing future deterrence. *See, e.g., SEC v. Tourre*, 4 F. Supp. 3d 579, 597 (S.D.N.Y. 2014).

In this case, the SEC considered multiple factors in determining appropriate civil penalties. These included the seriousness of the alleged violations, the market impact caused by the alleged conduct, and Defendants' financial means, but also countervailing factors such as Defendants' willingness to settle these actions promptly, Defendants' apparent lack of pecuniary gain, and the limited temporal scope of the conduct.

Finally, under the terms of the proposed consent judgments, Mr. Musk and Tesla have agreed to undertake a number of corporate governance measures specifically tailored to prevent future violations of the type alleged by the SEC here. Pursuant to the Court's equitable powers, it may order such ancillary relief to effectuate the purposes of the federal securities laws. *See SEC v. Am. Bd. of Trade, Inc.*, 830 F. 2d 431, 438 (2d Cir. 1987); 15 U.S.C. § 78u(d)(5) ("In any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek,

and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors.").

Specifically, Mr. Musk has agreed to undertakings requiring him to (a) resign from his role as Chairman of the board of directors of Tesla and not seek or accept reappointment as Chairman for a period of three years thereafter; (b) comply with all mandatory procedures implemented by Tesla regarding the (i) oversight of communications relating to the company made in any format, and (ii) pre-approval of written communications that contain, or reasonably could contain, information material to the company or its shareholders; and (c) certify, in writing, compliance with undertaking (a).  *See* Consent and Proposed Final Judgment as to Defendant Elon Musk, 1:18-cv-8865-AJN-GWG, Dkt. Nos. 6-1, 6-2.

Relatedly, Tesla has agreed to undertakings requiring it to (a) appoint an independent Chairman of Tesla's board of directors to replace Mr. Musk and not to reappoint Musk to Chairman for a minimum of three years, and only then if such reappointment is approved by a majority vote of shareholders; (b) add two independent directors to Tesla's board of directors; (c) create a permanent committee of Tesla's board of directors, consisting of independent directors only, overseeing (i) implementation of the terms of the consent and final judgment; (ii) the controls and processes governing the company's and its senior executives' disclosures and/or public statements that relate to the company; and (iii) the review and resolution of human resources issues or issues raising conflicts of interest that involve any member of executive management; (d) employ or designate an experienced securities lawyer for so long as Tesla remains a reporting company under the Exchange Act; (e) implement mandatory procedures and

controls to oversee all of Mr. Musk's communications regarding the company made in any format; and (f) certify, in writing, compliance with the undertakings. *See* Consent and Proposed Final Judgment as to Defendant Tesla, Inc., 1:18-cv-8947-AJN-GWG, Dkt. Nos. 3-1, 3-2.

These comprehensive undertakings are designed to benefit investors by putting additional corporate governance measures in place. Moreover, entry of the proposed consent judgments would ensure that these agreed-upon measures are implemented promptly, rather than at the conclusion of litigation, if at all.

**Position of Tesla and Mr. Musk**

Tesla and Mr. Musk believe that a prompt resolution of these actions through settlement is in the best interests of investors and should be approved.

\*　　　\*　　　\*

For all the reasons stated, the parties respectfully submit that the Court approve and enter the proposed consent judgments.

Dated: October 10, 2018

| | | |
|---|---|---|
| *[signature]* | *[signature]* | *[signature]* |
| Cheryl L. Crumpton | Steven M. Farina | Bradley J. Bondi |
| U.S. Securities and Exchange Commission | Williams & Connolly LLP | Cahill Gordon & Reindel LLP |
| 100 F Street, N.W. | 725 Twelfth Street, N.W. | 1990 K Street, N.W., Suite 950 |
| Washington, D.C. 20549 | Washington, D.C. 20005 | Washington, D.C. 20006 |
| | *Counsel for Elon Musk* | *Counsel for Tesla, Inc.* |