# EXHIBIT 7



**DIVISION OF ENFORCEMENT**

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
100 F STREET, N.E.
WASHINGTON, D.C. 20549

**Cheryl L. Crumpton**
**Supervisory Trial Attorney**
**Direct Dial: 202-551-4459**

February 26, 2019

<u>Via Email (bbondi@cahill.com)</u>

Tesla, Inc.
c/o Bradley J. Bondi, Esq.
Cahill Gordon & Reindel LLP

    Re:    *SEC v. Tesla, Inc.,* 1:18-cv-8947-AJN

Dear Mr. Bondi:

    Thank you for the information you provided in response to our request dated February 20, 2019.

    As we expressed on the telephone last week and reiterate today, we have serious concerns regarding Tesla, Inc.'s ("Tesla") compliance with the final judgment entered on October 16, 2018, in the above-captioned matter ("the Tesla Judgment"). Based on the representations in your February 22, 2019 letter and publicly-available information, it is our understanding that:

- Tesla's Designated Securities Counsel continually monitors Elon Musk's written communications after their publication on Twitter.

- Since December 11, 2018, Mr. Musk has published numerous tweets about Tesla. During this period, Mr. Musk has published Tesla-related tweets on a variety of topics, including (a) projections regarding Tesla's business, (b) Tesla production, (c) Tesla products, (d) Tesla safety, and (e) Tesla pricing.

- Based on the information you have provided to date, it appears that since Tesla's December 11, 2018 implementation of the mandatory policies, procedures, and controls required pursuant to the Tesla Judgment ("the Mandatory Procedures"), Mr. Musk has not submitted any proposed tweets for pre-approval and Tesla has not pre-approved any of Mr. Musk's tweets in accordance with the pre-approval provisions of the Mandatory Procedures.

- On February 19, 2019 at 7:15 pm Eastern Time, Mr. Musk published a tweet that

stated, "Tesla made 0 cars in 2011, but will make around 500k in 2019." Mr. Musk did not submit this tweet for pre-approval, and Tesla did not pre-approve the tweet.

As you know, on February 24, 2019, we requested that Tesla voluntarily provide additional information regarding whether any of Mr. Musk's tweets since December 11, 2018, have been pre-approved in accordance with the pre-approval provisions of the Mandatory Procedures. To date, we have not received a substantive response to our February 24 request.

In light of the above, we have concerns that Tesla has not complied—and will not comply in the future —with the requirements of the Tesla Judgment, especially regarding the pre-approval of Mr. Musk's written communications.

Accordingly, we request that Tesla: (1) immediately provide the information originally sought in our February 24 request (re-printed for your convenience below); and (2) provide certain additional information enumerated below no later than 5:00 PM PT on February 28, 2019.

### Information Originally Requested on February 24, 2019

1. After December 11, 2018, has Mr. Musk, in accordance with the pre-approval provisions of the Mandatory Procedures, submitted any tweets for pre-approval before publishing them?

2. If so, please identify the tweets Mr. Musk submitted for pre-approval.

3. After December 11, 2018, has Tesla, in accordance with the pre-approval provisions of the Mandatory Procedures, approved any of Mr. Musk's tweets before he published them?

4. If so, please identify which tweets Tesla approved before Mr. Musk published them and explain how they were pre-approved.

### Additional Information Requested on February 26, 2019

5. Please provide all talking points, scripts, Q&A, and/or similar documents that were pre-approved by Tesla in accordance with the pre-approval provisions of the Mandatory Procedures and that were used or reasonably expected to be used in or to prepare for Tesla's Q4 2018 Financial Results and Q&A call and webcast held on January 30, 2019. Please explain how each written communication was pre-approved.

6. Please explain whether, as of the date of this letter, Tesla has revised its public guidance, as originally stated in Tesla's Fourth Quarter & Full Year 2018 Update letter ("Q4 Letter"), that it is "expecting to deliver 360,000 to 400,000 vehicles in 2019." If Tesla has revised this public guidance, please describe when this decision was made, how it was disseminated to the public, and whether such

      public written communication was pre-approved pursuant to the Mandatory Procedures.

7. Please explain whether, as of the date of this letter, Tesla has revised its public guidance, as originally stated in the Q4 letter, that Tesla is "targeting annualized Model 3 output in excess of 500,000 units sometime between Q4 of 2019 and Q2 of 2020." If Tesla has revised this public guidance, please describe when this decision was made, how it was disseminated to the public, and whether such public written communication was pre-approved pursuant to the Mandatory Procedures.

8. Has Tesla's internal audit function reported any exceptions to the Mandatory Procedures implemented by Tesla pursuant to the Tesla Judgment to Tesla's Disclosure Controls Committee? If so, please identify the exceptions reported.

9. Have Tesla's Disclosure Controls Committee, General Counsel, and/or Disclosure Counsel, pursuant to the Mandatory Procedures, provided guidance to Mr. Musk in connection with their periodic review of past written communications? If so, please summarize all guidance provided.

10. Has Tesla's Disclosure Controls Committee recommended to Tesla's Board of Directors any action to be taken due to non-compliance with the Mandatory Procedures? If so, please explain the action(s) recommended and/or taken.

11. What additional steps, if any, does Tesla intend to take going forward to implement and/or enforce the Mandatory Procedures to ensure, among other things, that Mr. Musk, and any other Authorized Executive, submits written communications for pre-approval in accordance with the terms of the Tesla Judgment?

Please send responsive information and documents to:

    U.S. Securities and Exchange Commission
    Attn: Cheryl L. Crumpton
    Supervisory Trial Attorney
    Division of Enforcement
    U.S. Securities and Exchange Commission
    100 F Street, N.E.
    Washington, DC 20549-5985
    CrumptonC@sec.gov

   If you have any questions or would like to discuss this matter, you may call me at 202-551-4459.

                Sincerely,

                *s/ Cheryl L. Crumpton*