UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br>vs.<br><br>ELON MUSK,<br><br>  Defendant. | Case No. 1:18-cv-8865-AJN-GWG |

**SUR-REPLY IN RESPONSE TO ORDER TO SHOW CAUSE WHY DEFENDANT ELON MUSK SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THE COURT'S FINAL JUDGMENT**

The SEC's Reply makes clear that its effort to hold Musk in contempt relies on a radical reinterpretation of the Order that would impose sweeping restrictions to which Musk never consented. For example, the SEC asserts that tweets that touch upon broad subjects identified for *illustrative* purposes in the Policy are *necessarily* material. The SEC also asserts that any tweet which contains "substantive information about Tesla and its business" (regardless of how immaterial the information may be as a matter of law) requires pre-approval. Reply at 10. And the SEC shows, through its selection of ten tweets, that no matter how innocuous, how well known, or how removed from the subjects mentioned in the Policy, because the tweet concerns Tesla,[1] the SEC believes Musk must have them pre-approved. The only logical reading of the SEC's position is that if Musk tweets about Tesla and does not obtain pre-approval, he risks another contempt motion. Not only is the SEC's categorical approach inconsistent with the plain language of the Order, it is also belied by the settlement negotiations between the parties. The SEC sought a broad pre-approval requirement with respect to Musk's Tesla-related tweets, was told that Tesla and Musk would not agree, and conceded the point. It now seeks to achieve through a contempt hearing that which it could not through settlement.

The SEC's position is wrong at virtually every level. The Order requires Musk to "comply with all mandatory procedures implemented by Tesla . . . regarding . . . the pre-approval of any such written communications that contain, or reasonably could contain, information material to the Company or its shareholders." Dkt. 14 at 13-4. The key question is whether Musk complied with Tesla's Policy, not whether the SEC is satisfied with Tesla's Policy. Tesla's Policy does not

---

[1] A sample review of the new tweets identified by the SEC shows they plainly contain no material information. *See, e.g.*, Dkt. 30-7 at 2 (commenting that electricity costs less than gasoline and therefore electric cars can be cheaper to operate); *id.* at 13 (repeating government safety results published in prior Tesla Press Release); *id.* at 14 (stating that a statement made in an article that was factually not true was "untrue"). Indeed, many of these tweets are back-and-forth with customers about everyday matters regarding Tesla ownership. *See, e.g.*, *id.* at 5-6, 10, 13.

- 1 -

make any Tesla-related tweet *per se* material.  Instead, it incorporates the settled legal definition of "materiality," which is context-specific and fact-dependent, and it lists subjects that "*may*" be material "*depending on [their] significance*."  The Policy necessarily imposes an obligation on the executive to make an initial, good-faith determination as to whether a particular tweet requires pre-approval under the terms of the Policy.  Even if not dispositive, it is certainly highly probative that Tesla, which established, implemented, and monitors compliance with the Policy, has stated that Musk is in compliance.  Musk should not be found to have "clear[ly] and convincing[ly]" violated an Order to follow Tesla's Policy when Tesla itself affirms that he has done so.

Moreover, Musk's belief that the 7:15 tweet did not require pre-approval was correct.  Every hallmark of immateriality is present: the tweet restated previously-disclosed information, used generalized terms, was aspirational and optimistic, and caused *no* reaction in after-hours trading.  The SEC claims this is a "post hoc" rationalization.  Reply at 4.  To the contrary, the facts demonstrate that Musk exercised his discretion reasonably and in good faith, that his determination was consistent with well-established materiality standards applicable in SEC actions, and that his judgment was confirmed by the absence of any reaction to the tweet in after-hours trading.

The SEC also fails to show that Musk has not diligently attempted to comply with the Order.  The SEC now points to *other* tweets (rather than the *60 Minutes* interview) that it suggests possibly also should have been pre-approved.  These tweets, which include statements denying untrue rumors and repeating well-known safety information, prove Musk's point.  Since the Order was entered, Musk has not tweeted material information regarding Tesla.  It is because he has been *complying* with the Order, not defying it, that these tweets have not required pre-approval.

Finally, the SEC misrepresents Musk's constitutional concerns.  Musk does not contend that the Order is an unconstitutional prior restraint.  Rather, it is the overbroad *interpretation* of

the Order urged by the SEC that would raise serious constitutional concerns, and which the Court should therefore decline to adopt.

Musk respects his obligations to the Court, to Tesla, and to Tesla's shareholders.  The SEC has failed to satisfy its heavy burden of demonstrating clear and convincing evidence warranting the imposition of the extraordinary sanction of contempt.

## RELEVANT FACTUAL BACKGROUND

In the course of the negotiations that led to the entry of the Order, on September 20, 2018, the SEC sent Musk a draft Consent that required him to obtain pre-approval for *all* public statements related to Tesla.  The relevant provision required that Musk: "comply with all mandatory procedures implemented by [Tesla] regarding the oversight and ***approval of all of his public statements relating to the Company made in any format***[.]"  Ex. 9 at 5 (emphasis added).

On September 24, Tesla's counsel responded with redline revisions to the SEC's draft Consent, removing the requirement that all Musk's communications relating to Tesla be pre-approved.  The relevant provision required that Musk: "comply with all mandatory procedures implemented by [Tesla] regarding the oversight ~~and approval of all~~ of his public statements relating to the Company made in any format[.]"  Ex. 10 at 5 (alteration in original).

The scope of the pre-approval requirement became a sticking point during the negotiations. Musk's counsel explained that Musk's ability to engage with customers about Tesla products is critical to Tesla's success, and that Musk would not agree to broad pre-approval of Tesla-related statements. Ultimately the operative language required pre-approval only for: "written communications that contain, or reasonably could contain, information material to the Company or its shareholders[.]"  Dkt. 14 at 14.  The Policy lists categories of information that "may, *depending on its significance*, be material."  Dkt. 18-1 at 1 (emphasis added).

- 3 -

In negotiations over the Policy, Tesla and Musk made important revisions. First, the "depending on its significance" clause was added. *Compare* Ex. 11 at 2, *with* Dkt. 18-1 at 1. Second, they excised a clause requiring discussion with Tesla's counsel before publishing communications that "may be reasonably anticipated to invite controversy." *Id.* at 4.

## ARGUMENT

**I.   Musk Has Complied with the Order Because He Has Complied with the Policy.**

The Order requires Musk to comply with Tesla's Policy. As explained by Tesla, the Policy "provides examples of topics that 'may' be material to Tesla or its stockholders depending on the significance of the information in question." Ex. 8 at 2. The Policy also "vests discretion in its Authorized Executives . . . to make a judgment in the first instance about whether the information contained in a written communication" meets that standard. *Id.*

Tesla—which is best positioned to interpret its own Policy—has affirmed to the SEC that Musk complied with the Policy. *Id.* at 3-4. This is meaningful evidence that Musk has satisfied his obligations. The Court can discharge its Order to Show Cause on these grounds alone.

**II.   The SEC's Argument Rests on an Incorrect Interpretation of the Policy.**

The SEC's belief that Musk has not complied with the Policy rests on a reinterpretation of the Policy under which effectively all Tesla-related communications on a broad range of subjects are *per se* material and require pre-approval. *See* Reply at 4-5. But nowhere does the Policy require that all communications on the listed subjects be submitted for pre-approval regardless of their significance or context.

The Policy lists expansive categories such as "communications regarding new products" and "sales or delivery numbers or other major business developments." Dkt. 18-1 at 1. One need not strain to find communications that implicate these categories but would be immaterial. For example, no investor would consider material a tweet urging followers to check out Tesla's latest

- 4 -

vehicle (the Model Y), even though this is a communication regarding a new product. Nor would an investor find material a tweet in which Musk repeats Tesla's latest government safety rating. Under the SEC's view, both these tweets may be material and Musk must submit them for pre-approval or else be under threat of sanction. But the Policy is not categorical. It states that information on identified subjects, "*may, depending on its significance*," be material. Dkt. No. 18-1 at 1 (emphasis added). This clause, which the SEC never mentions in its Reply, is incompatible with the SEC's current view.

The SEC asserts that Musk's interpretation of the Order—that he has the initial obligation to determine whether a tweet requires pre-approval—is wrong because it is "inconsistent with the plain terms" of the Order and because Musk does not "identify any language in the order or the Tesla Policy that grants him such discretion." Reply at 1, 10. But the SEC, despite its burden to demonstrate by clear and convincing evidence that Musk violated the Order, fails to identify any other option for who would have that discretion. In fact, there is no other plausible interpretation of the Order or the Policy. If Musk were not vested with this discretion, then he would need to submit *all* Tesla-related tweets for review by Disclosure Counsel prior to posting. That is not what the Parties agreed to, nor what the Policy or Order requires.

"[A] district court may not 'expand or contract the agreement of the parties as set forth in [a] consent decree, and the explicit language of [a] decree is given great weight.'" *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995). "Because a decree is the sole source of the parties' rights, a district court may not impose obligations on a party that are not unambiguously mandated by the decree itself." *Id.* (citations omitted). The fact that the SEC has taken a particular interpretation of the Policy that is at odds with Musk's understanding (affirmed by Tesla) means that the obligations necessarily were not "unambiguously mandated" by the Order. *Id.*

- 5 -

**III.     The 7:15 Tweet Was Not Material.**

The SEC now asserts that the materiality standard in the Order and Policy "is not the same as the materiality standard that applies in SEC civil fraud actions," because the Policy also includes language concerning communications that "reasonably could contain" material information. Reply at 4.  The SEC, however, does not offer any clear definition of what this standard means (or meant at the time of the Order), effectively turning it into a sword to be yielded whenever the SEC sees fit.  But a contempt order cannot be issued unless the order at issue is "clear and unambiguous." *King*, 65 F.3d at 1058.

In any event, there is no basis in the text or negotiation history of the Order or the Policy to believe that "material" has a different meaning here than the definition used every day by the courts and the SEC in securities litigation.  Surely, if something is in fact legally immaterial, that is an effective proxy for assessing the propriety of Musk's good-faith determination that it reasonably could not be deemed material.

The SEC next argues that production forecasts are categorically material.  *See* Reply at 6-7.  Musk has never disputed that production forecasts may be material.  Materiality, however, is fact-based, and production information can be immaterial in many contexts as well.  Where, as here, the production forecasts were already in the public record, Musk's repeating of those forecasts did not significantly alter the total mix of information.

While the SEC attempts to show the 7:15 tweet was "materially different from prior public disclosures," Reply at 7, it does so by ignoring, downplaying, or mischaracterizing the disclosures. For example, the SEC brushes aside the significance of the January 30 Earnings Call, in which Musk stated that Model 3 production *alone* would be 350,000-500,000.  Response at 10.  Tesla also had publicly announced that as of Q4 2018, Model S and X vehicles were already being produced at a rate of 100,000 per year.  *Id.*  **This would put total production for 2019 at 450,000-**

- 6 -

**600,000.** The statement that total vehicle production in 2019 would be "around 500k" was not new information and was not inaccurate.[2] The SEC refers to Musk's Earnings Call statement as "cryptic," but does not deny its consistency with the 7:15 tweet. Reply at 8 n.6.[3]

Most conspicuously, the SEC boldly refers to the 7:15 tweet as "demonstrably material," but then fails to demonstrate such. The SEC offers no expert testimony, while ignoring the expert analysis finding that the tweet did not cause any notable movement in the after-hours market. Noe Decl. ¶¶ 14-34. The SEC asserts that Musk is asking the Court "to re-write the terms of its order" to evaluate his communications "based on a hindsight analysis of whether they moved the market." Reply at 3. Not so. The absence of market movement is compelling evidence that Musk properly determined the 7:15 tweet did not contain any material information. *United States v. Hatfield*, 2010 WL 1948236, at *1 (E.D.N.Y. May 12, 2010) (explaining that whether the relevant "acts affected [the company's] stock price goes directly to whether this conduct mattered to investors, and thus to materiality" (citing *United States v. Bilzerian*, 926 F.2d 1285, 1298 (2d Cir. 1991)). Given that the SEC's mission is to "protect investors" and "maintain fair, orderly, and efficient markets," the SEC should care that this tweet had no impact on investors or the market.[4]

### IV. Musk Has Diligently Attempted to Comply with the Order.

The SEC for the first time in this proceeding points to other Musk tweets that it deems suspect. Reply at 10 & Ex. 12 (asserting the tweets contain "substantive information about Tesla

---

[2] The SEC's reliance on public disclosures about Tesla *deliveries* is neither here nor there. As the SEC itself points out in its Reply, delivery and production forecasts are different and the numbers can and do vary. Reply at 8 n.4.

[3] The SEC also ignores the context in which the tweet was made. For example, the SEC ignores the 7:02 tweet to which the 7:15 tweet was linked. *See* Musk Decl. ¶ 8. Given the extensive available guidance, Musk's summary, celebratory, non-specific tweet would not have "significantly altered" the total mix of information in the mind of any reasonable investor.

[4] The SEC's Reply affirms that it does not believe there are any disputed facts. Reply at 14. Thus, the SEC must concede that it does not dispute Musk's statements that he believed his statement was not material nor reasonably could be, Musk Decl, ¶¶ 10-11, and that an expert confirms that the statement was not material, Noe Decl. ¶ 21.

and its business"). The SEC provides no reason, beyond the subjects of the tweets, to suggest that Musk's failure to have them pre-approved evidences non-compliance. As discussed, *supra* at 1 n.1, these tweets plainly do not contain material information. Musk's decision not to submit prior tweets for pre-approval reflects his compliance with the Policy because he has not tweeted material information. Musk Decl. ¶ 7.

The SEC does not address Musk's self-censorship or his posting of a subsequent tweet, both of which are highly relevant reflections of Musk's sincere efforts to comply with the Order.

## V. The SEC Mischaracterizes Musk's Constitutional Arguments.

The SEC argues that Musk waived his challenge to the constitutionality of the Order by consenting to its entry. Reply at 11-12. Musk, however, is challenging the SEC's re-interpretation of the Order, which raises constitutional concerns not implicated by the Order itself. *See* Response at 24 n.9. Musk did not consent to the overbroad prior restraint that the SEC is now trying to enforce. Musk Decl. ¶ 6; *supra* at 5.[5] And the SEC ignores the Second Circuit cases providing that, even if Musk did "consent," such consent would be irrelevant in light of the constitutional interests implicated. *See Crosby v. Bradstreet Co.*, 312 F.2d 483, 485 (2d Cir. 1963).

The SEC then argues that the First Amendment does not protect false, deceptive, or misleading speech. Reply at 12-13. But the SEC's proffered interpretation of the Order would not only gag "false or misleading" speech; it would gag *any* Tesla-related speech. The SEC also argues that the pre-approval requirement does not implicate the First Amendment because it comes from a Tesla Policy. However, the SEC seeks to enforce its interpretation of the Policy through a court-issued contempt order. That is plainly state action. *See e.g.*, *Crosby*, 312 F.2d at 485.

---

[5] The SEC cites *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 205 (3rd Cir. 2012), where the Court upheld a waiver of First Amendment rights "where the facts and circumstances surrounding the waiver ma[de] it clear that the party foregoing its rights ha[d] done so . . . with full understanding of the consequences of its waiver." Here, Musk did not agree to pre-censorship of all communications "relating to Tesla and its business."

Dated: March 22, 2019        HUESTON HENNIGAN LLP

                                       By: *s/ John C. Hueston*
                                               John C. Hueston*
                                               *jhueston@hueston.com*
                                               Marshall A. Camp
                                               *mcamp@hueston.com*
                                               Alison L. Plessman*
                                               *aplessman@hueston.com*
                                               Moez M. Kaba
                                               *mkaba@hueston.com*

                                               *Admitted *pro hac vice*

                                               HUESTON HENNIGAN LLP
                                               523 West 6th Street, Suite 400
                                               Los Angeles, CA 90014
                                               Telephone: (213) 788-4340
                                               Facsimile: (888) 775-0898

                                               *Attorneys for Defendant Elon Musk*

Proceeding.

## CERTIFICATE OF SERVICE

I certify that on March 22, 2019, a copy of the foregoing was filed through the Court's CM/ECF system, which will send copies to all counsel of record.

*s/ John C. Hueston*
Counsel for Elon Musk
