# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____
:
**UNITED STATES SECURITIES AND**            :
**EXCHANGE COMMISSION,**                     :
                                             :
    **Plaintiff,**        :
                                             :
    **v.**                :    Civil Action No. 1:18-cv-8865-AJN-GWG
                                             :
**ELON MUSK,**                               :
                                             :
    **Defendant.**         :
_____      :


_____
:
**UNITED STATES SECURITIES AND**            :
**EXCHANGE COMMISSION**                      :
                                             :
    **Plaintiff,**        :
                                             :
    **v.**                :    Civil Action No. 1:18-cv-8947
                                             :
**TESLA, INC.,**                             :
                                             :
    **Defendant.**         :
_____      :

## PLAN OF DISTRIBUTION

## I.    OVERVIEW

1.    This Distribution Plan (the "Plan") was developed jointly by the Distribution Agent and the Commission staff in accordance with practices and procedures customary in Fair Fund administrations. This Plan governs the administration and distribution of the Fair Fund, and sets forth the method and procedures for distributing the assets of the Fair Fund to certain Tesla investors harmed by the misconduct of Elon Musk ("Musk") and Tesla, Inc. ("Tesla") (collectively, the "Defendants").

II.     **BACKGROUND**

2.      On September 27, 2018, the Securities and Exchange Commission ("SEC" or "Commission") filed a civil action against Musk alleging violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] in connection with certain false and misleading statements by Musk.

3.      On September 29, 2018, the Commission filed a related civil action against Tesla alleging violations of Exchange Act Rule 13a-15 [17 C.F.R. § 240.13a-15], also in connection with Musk's false and misleading statements.

4.      The two complaints (the "Complaints") alleged that Musk, the Chief Executive Officer of Tesla, made a series of materially false and misleading statements about Tesla on his Twitter account in August 2018, and that Tesla failed to implement adequate procedures or controls for determining whether to disclose the information Musk disseminated on Twitter in its filings.  ECF No. 1.[1]

5.      On October 16, 2018, the Court entered a Final Judgment that required Musk to pay a civil penalty of $20,000,000.00 and permanently enjoined Musk from violating Section 10(b) of the Exchange Act and Rule 10b-5 thereunder in connection with Musk's false and misleading statements.  Also, on October 16, 2018, the Court entered a Final Judgment that required Tesla to pay a civil penalty of $20,000,000.00 and permanently enjoined Tesla from violating Exchange Act Rule 13a-15.

6.      Pursuant to their Final Judgments, the Defendants paid a total of $40,000,000.00 to the Commission (the "Fair Fund").  The Fair Fund was deposited into an interest-bearing account at the United States Department of the Treasury's Bureau of the Fiscal Services and it constitutes

---

[1] Complaint, *SEC v. Musk*, 18-cv-8865 (S.D.N.Y. 2018); Complaint, *SEC v. Tesla, Inc.*, 18-cv-8947 (S.D.N.Y. 2018).

a Qualified Settlement Fund ("QSF") under Section 468B(g) of the Internal Revenue Code, and related regulations, 26 C.F.R. §§ 1.468B-1 through 5.

7.      On February 6, 2019, the Court entered an Order consolidating the Musk and Tesla civil actions for the post-judgment purpose of distributing the funds paid by Defendants.

8.      By Order entered February 26, 2020, the Court established a Fair Fund (the "Fair Fund") pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002, so that the civil penalties paid by Defendants can be distributed to harmed investors, and appointed Miller Kaplan Arase LLP ("Miller Kaplan"), as the tax administrator ("Tax Administrator") of the Fair Fund.  ECF No. 53.

9.      By Order dated May 12, 2021, the Court appointed Rust Consulting as the distribution agent ("Distribution Agent") for the Fair Fund to assist in overseeing the administration and the distribution of the Fair Fund in coordination with Commission staff, pursuant to the terms of this Plan.  ECF No. 55.

## III.   DEFINITIONS

As used in this Plan, the following definitions will apply:

10.      "**Administrative Costs**" shall mean any administrative costs and expenses, including without limitation the fees and expenses of the Tax Administrator and the Distribution Agent, tax obligations, and investment and banking costs.

11.      "**Claim Form**" means the form designed by the Distribution Agent, in consultation with the Commission staff, for the filing of claims in accordance with this Plan.  The claim form will require, at a minimum, sufficient documentation reflecting any Preliminary Claimant's purchases and dispositions of Securities during the Relevant Period such that eligibility under the Plan can be determined, tax identification and other related information from the Preliminary Claimant as determined necessary by the Distribution Agent in coordination with the Tax Administrator, and a certification that the Preliminary Claimant is not an Excluded Party.  Claim Forms will be available on the website established in connection with the Fair Fund.  Preliminary Claimants may also request a Claim Form from the Distribution Agent via mail, email or by calling

the toll-free helpline established for the Fair Fund.

12.    "**Claim Status Notice**" means the notice sent by the Distribution Agent within one hundred thirty-five (135) days of the Claims Bar Date to all Potential Claimants that submitted a Claim Form.  The Claim Status Notice will set forth the Fund Administrator's determination of the eligibility of the claim (eligible, partially or wholly deficient, or ineligible) and their Recognized Loss.  The Claim Status Notice will provide to each Potential Claimant whose claim is deficient, in whole or in part, the reason(s) for the deficiency, notify the Potential Claimant of the opportunity to cure such deficiency, and provide instructions regarding further necessary actions.  In the event the claim is denied, the Claim Status Notice will state the reason(s) for such denial and notify the Potential Claimant of their opportunity to request reconsideration of their claim.

13.    "**Claims Bar Date**" means the date established in accordance with this Plan by which a Preliminary Claimant's Claim Form must be postmarked or submitted electronically in order to receive consideration under the Plan.  The Claims Bar Date shall be one hundred twenty (120) days after the initial mailing of the Postcard Plan Notice.  Claim Forms submitted by Preliminary Claimants postmarked or received after the Claims Bar Date will not be accepted unless the Distribution Agent is directed to do so by the Commission staff

14.    "**Claims Packet**" shall mean, at a minimum, a copy of the Plan Notice and a Claim Form (together with instructions for completion of the Claim Form).

15.    "**Distribution Payment**" means a payment from the Fair Fund to a Payee in accordance with the terms of this Plan.

16.    "**Eligible Claimant**" means a Preliminary Claimant who submitted a valid claim, who may have suffered a loss as a result of transactions in the Securities during the Relevant Period, pursuant to the Plan of Allocation, and who is not an Excluded Party.

17.    "**Excluded Party**" shall mean:

(a)    The Defendants;

(b)    Present or former officers or directors of Defendant Tesla or any assigns, creditors, heirs, distributees, spouses, parents, dependent children or

controlled entities of any of the foregoing persons or entities;

(c)     Any employee or former employee of the Defendant Tesla or any of its affiliates who has been terminated for cause or has otherwise resigned, in connection with the conduct detailed in the Complaint;

(d)     Any Person who, as of the Claims Bar Date, has been the subject of criminal charges related to the conduct detailed in the Complaint or any related Commission action;

(e)     Any firm, trust, corporation, officer, or other entity in which Defendants have or had a controlling interest;

(f)     The Distribution Agent, its employees, and those persons assisting the Distribution Agent in its role as the Distribution Agent; or

(g)     Any purchaser or assignee of another Person's right to obtain a recovery from the Fair Fund for value; provided, however, that this provision shall not be construed to exclude those Persons who obtained such a right by gift, inheritance or devise.

The Claim Form will require Preliminary Claimants to certify that they are not an Excluded Party.

18.     "**Fair Fund**" means the fund created by the Court in its February 26, 2020 Order, pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002, for the benefit of investors harmed by Defendants' violations detailed in the Complaints.

19.     "**Final Determination Notice**" shall mean the written notice sent by the Distribution Agent to any Preliminary Claimant who timely responded to the Claim Status Notice in an effort to cure a deficiency, seek reconsideration of a denied claim, or otherwise dispute the determination made by the Distribution Agent, notifying the Preliminary Claimant of its determination. The Final Determination Notice will constitute the Distribution Agent's final ruling regarding the status of the claim.

20.     "**Net Available Fair Fund**" means the Fair Fund, plus any interest or earnings, less

Administrative Costs.

21.     "**Payee**" means an Eligible Claimant who is determined to receive a Distribution Payment, as calculated in accordance with the Plan of Allocation.

22.     "**Person**" means natural individuals as well as legal entities such as corporations, partnerships, or limited liability companies.

23.     "**Plan Notice**" means the notice posted, in a downloadable format, on the Fair Fund's website informing Preliminary Claimants of the Fair Fund; the Plan and its eligibility requirements; explaining how to submit a claim, including directions for any online claims process; and how to obtain a copy of the approved Plan and Claim Form by request or from the Fair Fund's website.

24.     "**Plan of Allocation**" means the methodology by which an Eligible Claimant's Recognized Loss is calculated.  The Plan of Allocation is attached as Exhibit A.

25.     "**Postcard Plan Notice**" shall mean the postcard notice mailed to Preliminary Claimants informing them of the Fair Fund and that they must submit a Claim Form and supporting documentation prior to the Claims Bar Date in order to participate in the Fair Fund.  The Postcard Plan Notice will explain how to obtain a Claim Form, submit a claim, and obtain or request additional information from the Fair Fund's website.

26.     "**Preliminary Claimant**" shall mean a Person, or their lawful successors, asserting prior to the Claims Bar Date that they have a possible claim to recover from the Fair Fund under this Plan.

27.     "**Recognized Loss**" means the amount of loss calculated for an Eligible Claimant in accordance with the Plan of Allocation.

28.     "**Relevant Period**" shall mean between 12:48:16 p.m. EDT on August 7, 2018 and 4:00 p.m. EDT on August 8, 2018.

29.     "**Securities**" refers to shares of Tesla common stock listed on a U.S. exchange and registered with the Commission and traded under the symbol TSLA during the Relevant Period.

30.     "**Summary Notice**" means the notice published in print or internet media that shall

include, at a minimum, a statement of the purpose of the Fair Fund and the Plan, the means of obtaining a Claim Form, and the Claims Bar Date.  The Summary Notice will be published within fourteen (14) days of the initial mailing of the Postcard Plan Notice.

31.     "**Third-Party Filer**" means a third-party, including without limitation a nominee, custodian, or an intermediary holding in street name, who is authorized to submit and submits a claim(s) on behalf of one or more Preliminary Claimants.  Third-Party Filer does not include assignees or purchasers of claims, which are excluded from receiving Distribution Payments.

## IV.     TAX COMPLIANCE

32.     The Fair Fund constitutes a Qualified Settlement Fund ("QSF") under Section 468B(g) of the Internal Revenue Code of 1986, as amended, 26 U.S.C. § 468B(g), and related regulations, 26 C.F.R. §§ 1.468B-1 through 1.468B-5.  The Tax Administrator is the administrator of such QSF, for purposes of Treas. Reg. § 1.468B-2(k)(3)(I) and shall satisfy the tax-related administrative requirements imposed by Treas. Reg. § 1.468B-2, including, but not limited to:

     (a)     Obtaining a taxpayer identification number;

     (b)     Requesting funds necessary for the timely payment of all applicable taxes, the payment of taxes for which the Tax Administrator has received funds, and the filing of applicable returns; and

     (c)     Fulfilling any information reporting or withholding requirements required for distributions from the Fair Fund.

## V.     DISTRIBUTION AGENT

33.     The Distribution Agent will be responsible for administering the Fair Fund in accordance with the Plan.  This will include, among other things, taking reasonable steps to identify and contact Preliminary Claimants; obtaining mailing information for Preliminary Claimants; establishing a website and staffing a call center to address inquiries during the claims process; developing a claims database; preparing accountings; cooperating with the tax administrator appointed by the Commission to satisfy any tax liabilities and to ensure compliance with income tax reporting requirements, including but not limited to Foreign Account Tax Compliance Act

(FATCA); advising Preliminary Claimants of deficiencies in claims and providing an opportunity to cure any documentary defects; taking antifraud measures, such as identifying false, ineligible and overstated claims; making determinations under the criteria established herein as to Preliminary Claimant eligibility; advising Preliminary Claimants of final claim determinations; disbursing the Fair Fund in accordance with this Plan, as ordered by the Court; and researching and reconciling errors and reissuing payments, when possible.

34.     To carry out the purposes of this Plan, the Distribution Agent is authorized to make and implement immaterial changes to the Plan upon agreement of the Commission staff.  If a change is deemed to be material by the Commission staff, Court approval is required prior to implementation by amending the Plan.

35.     The Distribution Agent may extend any procedural deadline contained in the Plan for good cause shown, if agreed upon by the Commission staff.

36.     The Distribution Agent is authorized to enter into agreements with third-parties as may be appropriate or necessary in the administration of the Fair Fund, provided such third-parties are not excluded pursuant to other provisions of this Plan.  In connection with such agreements, the third-parties shall be deemed to be agents of the Distribution Agent under this Plan.

37.     The Distribution Agent may be removed at any time by the Court, and replaced with a successor.  In the event the Distribution Agent decides to resign, it will first give written notice to the Commission staff and the Court of such intention, and such resignation will not be effective until the Court has appointed a successor.  The Distribution Agent will then follow such instructions as such successor or the Court provides in turning over management of the Fair Fund.

## VI.     ADMINISTRATION OF THE FAIR FUND

### Identification of and Notification to Preliminary Claimants

38.     The Distribution Agent will, insofar as practicable, use its best efforts to identify Preliminary Claimants from a review of trading records, obtaining records from registered broker-dealers and investment advisors, and seeking information from any other source available to it.

39.     Within forty-five (45) days after Court approval of the Plan, the Distribution Agent shall:

(a)     design and submit the Postcard Plan Notice, the Plan Notice, and the Claim Form, to the Commission staff for review and approval;

(b)     create a mailing and claim database of all Preliminary Claimants based upon information identified by the Distribution Agent;

(c)     run a National Change of Address search to retrieve updated addresses for all records in the database, thereby ensuring the mailing information for Preliminary Claimants is up-to-date;

(d)     mail a Postcard Plan Notice to each Preliminary Claimant identified by the Distribution Agent and to the Distribution Agent's list of banks, brokers, and other nominees in accordance with paragraph 44 below;

(e)     establish and maintain a website devoted solely to the Fair Fund.  The Fair Fund's website, located at www.secvteslafairfund.com, will make available a copy of the approved Plan; provide information regarding the claims process and eligibility requirements for participation in the Fair Fund in the form of frequently asked questions; include in downloadable form, the Claim Form, Plan Notice, and other related materials; and such other information the Distribution Agent believes will be beneficial to Preliminary Claimants;

(f)     establish and maintain a toll-free telephone number, 1 (877) 576-9981, for Preliminary Claimants to call to speak to a live representative of the Distribution Agent during its regular business hours or, outside of such hours, to hear prerecorded information about the Fair Fund.  The toll-free number will be listed on all correspondence from the Distribution Agent to Preliminary Claimants as well as on the Fair Fund's website; and

(g)     establish and maintain a traditional mailing address and an email address

which will be listed on all correspondence from the Distribution Agent to Preliminary Claimants as well as on the Fair Fund's website.

40.     The Distribution Agent will publish the Summary Notice on the internet and/or in print media acceptable to Commission staff within fourteen (14) days of the initial mailing of the Postcard Plan Notice.

41.     The Commission staff retains the right to review and approve any material posted on the Fair Fund's website, any material mailed, and any scripts used in connection with any communication with Preliminary Claimants.

42.     In all materials that refer to the Claims Bar Date, the filing deadline will be clearly identified with the calendar date, which is one hundred twenty (120) days from the date of the initial mailing of the Postcard Plan Notice.

43.     The Distribution Agent will promptly provide a Claims Packet to any Preliminary Claimant upon request made via mail, phone, or email prior to the Claims Bar Date.

44.     The Distribution Agent will send by mail, email, or other means, the Postcard Plan Notice to the Distribution Agent's list of banks, brokers, and other nominees, as well as any other institutions identified during the outreach process, that may have records of the Securities during the Relevant Period (collectively, the "Nominees or Custodians").  The Distribution Agent will request that these entities, to the extent that they were record holders for beneficial owners of the Securities:

    (h)     within fourteen (14) days of the Nominees' or Custodians' receipt of the Postcard Plan Notice, notify and send the Postcard Plan Notice to the respective beneficial owners, and, as requested, provide to the beneficial owners a Claim Form, so that the beneficial owners may timely file a claim. The burden will be on the Nominees or Custodians to ensure the claims process information, including, if requested, the Claim Form and other relevant materials, is properly disseminated to the beneficial owners; and/or

    (i)     provide to the Distribution Agent, within fourteen (14) days of receipt of

the Postcard Plan Notice, a list of last known names and addresses for all beneficial owners for whom/which they purchased, as the record holder, the Securities during the Relevant Period, so that the Distribution Agent can communicate with the beneficial owners directly.

45.     At the discretion of the Distribution Agent, in consultation with the Commission staff, a reasonable number of additional copies of the Postcard Plan Notice shall be made available to any Nominee or Custodian requesting it for the purpose of distribution to beneficial owners. The dissemination of the Postcard Plan Notice by Nominees or Custodians by email is encouraged.

46.     Requests to the Distribution Agent for additional copies of the Postcard Plan Notice in excess of 500 are subject to approval by the Distribution Agent, in consultation with the Commission staff.

47.     Documented reasonable out-of-pocket expenses incurred by the Nominees or the Custodians, which would not have been incurred but for compliance with paragraph 44 above, shall be reimbursed from the Fair Fund.  The amount of such expenses allowed will be at the discretion of the Distribution Agent, in consultation with the Commission staff.  Unless otherwise determined by the Distribution Agent in consultation with the Commission staff, out-of-pocket expenses based on the following rates will be considered reasonable:

(a)     a maximum of $0.05 per Postcard Plan Notice, plus postage at the pre-sort postage rate per Postcard Plan Notice actually mailed;

(b)     $0.03 per email of Postcard Plan Notice, Summary Notice or Claims Packet link disseminated; or

(c)     $0.20 per name, address, and email address provided to the Distribution Agent, up to a maximum of amount of $1,500.00.

48.     The Distribution Agent will attempt to locate any Preliminary Claimant whose mailing is returned as "undeliverable" and will document all such efforts.  The Distribution Agent shall use its best efforts to make use of commercially available resources and other reasonably appropriate means to obtain updated addresses in response to "undeliverable" notices, and forward

11

any returned mail for which an updated address is provided or obtained.  The Distribution Agent will make available, upon request by the Commission staff, a list of all Preliminary Claimants whose Postcard Plan Notices have been returned as "undeliverable" due to incorrect addresses and for which the Distribution Agent has been unable to locate current addresses.

Filing a Claim

49.     To avoid being barred from asserting a claim, on or before the Claims Bar Date, each Preliminary Claimant must submit to the Distribution Agent a properly completed Claim Form reflecting such Preliminary Claimant's claim, together with all required supporting documentation as the Distribution Agent, in its discretion, deems necessary or appropriate to substantiate the claim.  Without limitation, this information may include third-party documentary evidence of purchases and dispositions of Securities during the Relevant Period, as well as holdings of Securities at pertinent dates.

50.     The burden will be upon the Preliminary Claimant to ensure that his, her or its Claim Form has been properly and timely received by the Distribution Agent.  A Claim Form that is postmarked or received after the Claims Bar Date will not be accepted unless the deadline is extended by the Distribution Agent for good cause shown, after consultation with the Commission staff.

51.     All Claim Forms and supporting documentation necessary to determine a Preliminary Claimant's eligibility to receive a distribution from the Fair Fund under the terms of the Plan must be verified by a declaration executed by the Preliminary Claimant under penalty of perjury under the laws of the United States.  The declaration must be executed by the Preliminary Claimant, unless the Distribution Agent accepts such declaration from a Person authorized to act on the Preliminary Claimant's behalf, whose authority is supported by such documentary evidence as the Distribution Agent deems necessary.

52.     Electronic claims submission is encouraged; the Postcard Plan Notice will include instructions on how Preliminary Claimants can submit their claims electronically via the Fair Fund's website.  If using the web-based claim filing option, a Preliminary Claimant must submit

their claim to the Distribution Agent by 11:59 p.m. Eastern Standard Time on the Claims Bar Date. The Postcard Plan Notice will also include instructions for submission of claims if the Preliminary Claimant is unable to submit their claim electronically.

53.     Claims containing (a) one hundred (100) or more transactions or (b) claims submitted by an intermediary on behalf of twenty (20) or more accounts must be submitted electronically using the format provided by the Distribution Agent.  The electronic filing template will be made available on the Fair Fund's website.  Files that do not comply with the format provided by the Distribution Agent may be rejected.

54.     When submitting claims to the Fair Fund on behalf of its clients, all Third-Party Filers must use the electronic filing template provided by the Distribution Agent in this matter. Filers that do not comply with the template and format provided by the Distribution Agent may be rejected.  Third-Party Filers must also submit a signed master proof of claim and release, as well as proof of authority to file on behalf of the claimant(s) at the time the electronic file of transactions is submitted.  Failure to do so may result in rejection of the claim.

55.     Each Third-Party Filer must establish the validity and amount of each claim in its submission.  Third-Party Filers must submit such supporting documentary evidence of purchases, dispositions, and holdings of Securities as the Distribution Agent deems necessary or appropriate to substantiate each individual claim.  Without limitation, this includes the complete name of the Preliminary Claimant (beneficial account owner) and its TIN (for individuals) or EIN (for companies), sufficient contact information to confirm the identity of the beneficial owner, and documentation from the original bank, broker or other institution of purchases and dispositions of Securities (account statements, confirmations and other documentation of purchases and dispositions), as well as holdings of the Securities on pertinent dates.  Documentation generated by the Third-Party Filer as well as affidavits in lieu of supporting documentation will not be accepted unless, for good cause, the Distribution Agent determines it acceptable.  The Distribution Agent will have the right to request, and the Third-Party Filer will have the burden of providing to the Distribution Agent, any additional information and/or documentation deemed necessary by the

Distribution Agent to substantiate the claim(s) contained in the submission.  Documentation from a Third-Party Filer that is not acceptable to the Distribution Agent will result in rejection of the affected claim(s).  The determination of the Distribution Agent to reject a claim for insufficient documentation, as reflected on the Final Determination Notice, is final and within the discretion of the Distribution Agent.

56.     No Person who purchased a claim shall be deemed an Eligible Claimant under the Plan.  Provided however, Persons that received the Security by gift, inheritance, devise, or by operation of law from someone who died intestate may be eligible for a recovery from the Fair Fund if the original purchaser of the Security would have been eligible under the terms of this Plan.  Any gift, inheritance, devise or transfer by operation of law from someone who died intestate will not be deemed to be a purchase of the Security, nor will it be deemed an assignment of any claim relating to the purchase of such securities unless specifically so provided in the instrument of inheritance.  Only one claim may be submitted with regard to the same transactions in Securities, and in cases where multiple claims are filed by the donor and donee, the donee claim will be honored, assuming it is supported by proper documentation.  Notwithstanding any of the foregoing, the Distribution Agent shall be entitled to disallow any claim that the Distribution Agent finds was not acquired via a bona fide gift in its entirety, or where the Distribution Agent finds that the inheritance, devise or operation of law was obtained through payment in any form.

57.     Claims on behalf of a retirement plan covered by Section 3(3) of ERISA, 29 U.S.C.§ 1002(3), which do not include Individual Retirement Accounts and such plan's participants, are properly made by the administrator, custodian or fiduciary of the plan and not by the plan's participants.  The Distribution Agent will distribute any payments on such claims directly to the administrator, custodian or fiduciary of the retirement plan.  The custodian or fiduciary of the retirement plan will distribute any payments received in a manner consistent with its fiduciary duties and the governing account or plan provisions.

Claims Eligibility Determination

58.     The Distribution Agent will review all claim submissions and determine the

eligibility of each Preliminary Claimant to participate in the Fair Fund by reviewing claim data and supporting documentation (or the lack thereof) and verifying the claim. Any Preliminary Claimant with a valid claim that held the Security during the Relevant Period and who is not an Excluded Party, will be deemed an Eligible Claimant. The Distribution Agent will then determine if the Eligible Claimant has suffered a Recognized Loss pursuant to the Plan of Allocation. Each Preliminary Claimant will have the burden of proof to establish the validity and amount of his, her or its claim, and qualification as an Eligible Claimant. The Distribution Agent will have the right to request, and the Preliminary Claimant will have the burden of providing to the Distribution Agent, any additional information and/or documentation deemed relevant by the Distribution Agent.

59.    The Distribution Agent will provide a Claim Status Notice within one hundred thirty-five (135) days of the Claims Bar Date to each Preliminary Claimant who has filed a Claim Form with the Distribution Agent setting forth the Distribution Agent's determination of eligibility and the amount of calculated Recognized Loss. The Claim Status Notice will provide to each Preliminary Claimant whose claim is deficient, in whole or in part, the reason(s) for the deficiency (*e.g.*, failure to provide required information or documentation). In the event the claim is denied, in whole or in part, the Claim Status Notice will state the reason(s) for such denial. The Claim Status Notice will also notify the Preliminary Claimant of the opportunity to cure any deficiency, request reconsideration, or dispute the determination made by the Distribution Agent and provide instructions regarding what is required to do so.

60.    Any Preliminary Claimant with a deficient claim will have forty-five (45) days from the date of the Claim Status Notice to cure any deficiencies identified in the Claim Status Notice.

61.    Any Preliminary Claimant seeking reconsideration of a denied claim must advise the Distribution Agent in writing within forty-five (45) days of the date of the Claim Status Notice. All requests for reconsideration must include the necessary documentation to substantiate the basis upon which the Preliminary Claimant is requesting reconsideration of their claim.

62.     The Distribution Agent may, in its sole discretion, consider disputes of any nature presented in writing within forty-five (45) days of the Claim Status Notice by Preliminary Claimants, and will consult Commission staff as appropriate.

63.     The Distribution Agent will send, as appropriate, a Final Determination Notice to all Preliminary Claimants who responded to the Claim Status Notice in an effort to cure a deficiency, seek reconsideration of a rejected claim, or dispute the determination made by the Distribution Agent, notifying the Preliminary Claimant of its determination.  The Distribution Agent will send such Final Determination Notices no later than sixty (60) days following receipt of documentation or information in response to the Claim Status Notice, or such longer time as the Distribution Agent determines is necessary for a proper determination concerning the claim.

64.     The Distribution Agent will have the authority, in its sole discretion, to waive technical claim deficiencies and approve claims on a case-by-case basis, or in groups of claims. All determinations made by the Distribution Agent in accordance with the Plan in any dispute, request for reconsideration, or request to cure a deficient claim will be final and not subject to appeal.

65.     The Preliminary Claimant has the burden of notifying the Distribution Agent of a change in his, her or its current address and other contact information, and of ensuring that such information is properly reflected on the Distribution Agent's records.

Third-Party Review

66.     After the Distribution Agent has completed the process of analyzing the claims and determining claim amounts in accordance with the Plan, and prior to the distribution of any funds, the Distribution Agent will engage an independent, third-party firm, not unacceptable to Commission staff, to perform a set of agreed upon procedures, review a statistically significant sample of claims and ensure accurate and comprehensive application of the Plan of Allocation. The Distribution Agent will communicate the results of the review to Commission staff together with any written analysis or reports related to the review, and, upon request, will make the firm available to the Commission staff to respond to questions concerning the review.

Distribution Methodology

67.     The Distribution Agent will calculate each Eligible Claimant's Recognized Loss in accordance with the Plan of Allocation.  All Eligible Claimants who are determined to receive a Distribution Payment will be deemed a Payee.

68.     The Distribution Agent in its exclusive discretion may, but will have no obligation to, aggregate accounts held by a Person in the same legal capacity in determining Recognized Loss and Distribution Payment amounts.

Establishment of a Reserve

69.     Before determining the amount of funds available for distribution and calculating each Payee's Distribution Payment, the Distribution Agent, in conjunction with the Tax Administrator, will establish a reserve to pay Administrative Costs and to accommodate any unexpected expenditures (the "Reserve").

70.     After all disbursements and Administrative Costs are paid, any remaining amounts in the Reserve will become part of the Residual described in paragraph 94 below.

Preparation of the Payment File

71.     Within seventy-five (75) days following the date of the Final Determination Notices described above, paragraph 63, the Distribution Agent will compile and send to the Commission staff the Payee information, including the name, address, calculated Recognized Loss, and the amount of the Distribution Payment for all Payees (the "Payee List").  The Distribution Agent will also provide a Declaration to the Commission staff for review, representing that the Payee List: (a) was compiled in accordance with the approved Plan; (b) is accurate as to Payees' names, addresses, Recognized Losses and amounts of their Distribution Payment; (c) includes the number of Payees compensated; (d) includes the pro-rata applied, if any; (e) includes the percentage of Recognized Loss being compensated by the Fair Fund; (f) includes the total amount being distributed; and (g) provides all information necessary to make a payment to each Payee.

The Escrow Account

72.     Prior to the disbursement of the Net Available Fair Fund, the Distribution Agent

will establish an escrow account (the "Escrow Account") with a United States commercial bank that is a well-capitalized financial institution as defined by the Federal Reserve Act, Subpart D, 12 C.F.R. 208.43 and that is not unacceptable to the Commission staff (the "Bank"), pursuant to an escrow agreement (the "Escrow Agreement") to be provided by Commission staff.

73.     The Distribution Agent, pursuant to the Escrow Agreement, shall also establish with the Bank a separate deposit account (*e.g.* controlled distribution account, managed distribution account, linked checking and investment account) (the "Distribution Account"), insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC pass through limit. The Distribution Account shall be linked with the Escrow Account and shall be named, and records maintained, in accordance with the Escrow Agreement.

74.     During the term of the Escrow Agreement, the portions of the Fair Fund transferred to the Escrow Account (the "Escrow Property"), shall be invested and reinvested in short-term U.S. Treasury securities backed by the full faith and credit of the United States Government or an agency thereof. The investment shall be, of a type and term necessary to meet the cash liquidity requirements for payments to Payees, tax obligations, and/or fees of the Tax Administrator and/or Distribution Agent, including investment or reinvestment in a bank account insured by the FDIC up to the guaranteed FDIC limit, or in money market mutual funds registered under the Investment Company Act of 1940 that invest 100% of their assets in direct obligations of the United States Government.

75.     Within ten (10) days of transfer of the Escrow Property, the Distribution Agent shall sign and file a receipt acknowledging the receipt of the funds and supply a copy of the receipt to the counsel of record for the Commission in this matter.

76.     The Distribution Agent shall provide duplicate original bank and/or investment statements on any accounts established by the Distribution Agent to the Tax Administrator on a monthly basis and shall assist the Tax Administrator in obtaining mid-cycle statements, as necessary.

77.     The Distribution Agent shall deposit or invest funds in the Escrow and Distribution

Accounts so as to result in the maximum reasonable net return, taking into account the safety of such deposits or investments.  In consultation with Commission staff, the Distribution Agent shall work with the Bank on an ongoing basis to determine an allocation of funds between the Escrow and Distribution Account.

78.    All interest, dividends, and/or income earned by the Escrow Property will accrue for the benefit of the Escrow Property.  All Administrative Costs associated with the Escrow and Distribution Accounts will be the responsibility of the Distribution Agent, who may be reimbursed for said costs as provided in this Plan.  No such Administrative Costs may be paid to the Bank, its agents, and/or its affiliates from the Escrow Property.

Distribution of the Fair Fund

79.    The Distribution Agent will seek to distribute the Net Available Fair Fund to all Payees, in one or more tranches, only after all Claim Forms have been processed and all Preliminary Claimants whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to contest or cure pursuant to the procedures set forth herein.

80.    Upon the Commission staff's receipt, review, and acceptance of the Payee List and Declaration from the Distribution Agent, the Commission staff will petition the Court for authority to disburse funds to the Bank in accordance with the Payee List for distribution by the Distribution Agent in accordance with the Plan.  The Payee List shall, upon request, be made available to the Court under seal.  No distribution will be conducted without prior authorization by an Order of this Court.

81.    Upon issuance of an Order to disburse by this Court, the Commission staff will direct the transfer of the amount of funds referred to on the Payee List to the Bank.

82.    The Distribution Agent will then use its best efforts to commence mailing Distribution Payment checks and/or effect wire transfers within twenty (20) business days of the release of the funds into the Escrow Account.  All efforts will be coordinated to limit the time between the Escrow Account's receipt of the funds and the issuance of Distribution Payments.

83.     All Distribution Payments will be issued by the Distribution Agent from the Distribution Account.  All checks will bear a stale date of ninety (90) days from the date of issuance.  Checks that are not negotiated by the stale date will be voided, and the Bank will be instructed to stop payment on those checks.  A Payee's claim will be extinguished if he, she, or it fails to negotiate his, her or its check by the stale date, and the funds will remain in the Fair Fund, except as provided in paragraph 90.

84.     All payments will be preceded or accompanied by a communication that includes, as appropriate:  (a) a statement characterizing the distribution; (b) a statement that the tax treatment of the distribution is the responsibility of each Payee and that the Payee should consult his, her or its tax advisor for advice regarding the tax treatment of the distribution; (c) a statement that checks will be void and cannot be reissued after ninety (90) days from the date the original check was issued; and (d) contact information for the Distribution Agent for questions regarding the Distribution Payment.  The letter or other mailings to Payees characterizing a Distribution Payment will be submitted to the Tax Administrator and Commission staff for review and approval.

85.     All Distribution Payments, either on their face or in the accompanying mailing, will clearly indicate that the money is being distributed from the Fair Fund established by the Commission to compensate investors for harm as a result of securities law violations.

86.     Distribution Payments must be made by check or electronic payment payable to the Payee (the beneficial account owner).  A Third-Party Filer shall not be the payee of any Distribution Payment check or electronic Distribution Payment.  Any other payment arrangement must be discussed with the Distribution Agent in consultation with the Commission staff and must be authorized by the Payee.  Compensation to a Third-Party Filer for its services may not be paid or deducted from the Distribution Payment.

87.     If, after discussion with the Distribution Agent in consultation with the Commission staff, and authorization by the Payee(s), a Distribution Payment is to be made to a Third-Party Filer to distribute to the Payee(s), the Third-Party Filer will be required to complete the certification on the Claim Form, which will require them, at a minimum, to attest that any

distribution to the custodian, trustee, or investment professional representing multiple potentially eligible beneficial owners, will be allocated for the benefit of current or former pooled investors and not for the benefit of management.  The certification, as part of the Claim Form, will be available on the Fair Fund website and upon request from the Distribution Agent.  All such Third-Party Filers must have an auditable mechanism available to the Distribution Agent and the Commission staff to confirm that each Payee received the Distribution Payment directed to them.

88.     The submission of a Claim Form and the receipt and acceptance of a Distribution Payment by a Payee is not intended to be a release of a Payee's rights and claims against any party.

89.     Electronic or wire transfers may be utilized at the discretion of the Distribution Agent to transfer approved Distribution Payments to filers of claims on behalf of Payees.  Wire transfers will be initiated by the Distribution Agent using a two-party check and balance system, whereby completion of a wire transfer will require an authorization by two members of the Distribution Agent's senior staff.

<u>Post Distribution; Handling of Returned or Uncashed Checks; and Reissues</u>

90.     The Distribution Agent shall use its best efforts to make use of commercially available resources and other reasonably appropriate means to locate all Payees whose checks are returned to the Distribution Agent as "undeliverable."  If new address information becomes available, the Distribution Agent will repackage the distribution check and send it to the new address.  If new address information is not available after a diligent search (and in no event no later than ninety (90) days after the initial mailing of the original check) or if the distribution check is returned again, the check shall be voided and the Distribution Agent shall instruct the issuing financial institution to stop payment on such check.  If the Distribution Agent is unable to find a Payee's correct address, the Distribution Agent, in its discretion, may remove such Payee from the distribution and the allocated Distribution Payment will remain in the Fair Fund for distribution, if feasible, to the remaining Payees.

91.     The Distribution Agent will reissue checks to Payees upon the receipt of a valid, written request from the Payee prior to the initial stale date.  In cases where a Payee is unable to

endorse a Distribution Payment check as written (*e.g.*, name changes, IRA custodian changes, or recipient is deceased) and the Payee or a lawful representative requests the reissuance of a Distribution Payment check in a different name, the Distribution Agent will request, and must receive, documentation to support the requested change.  The Distribution Agent will review the documentation to determine the authenticity and propriety of the change request.  If, in the discretion of the Distribution Agent, such change request is properly documented, the Distribution Agent will issue an appropriately redrawn Distribution Payment to the requesting party.  Reissued checks will be void at the later of ninety (90) days from issuance of the original check or thirty (30) days from the reissuance, and in no event will a check be reissued after ninety (90) days from the date of the original issuance without the approval of Commission staff.

92.     The Distribution Agent will make reasonable efforts to contact Payees who have failed to negotiate their Distribution Payment check and take appropriate action to follow up on the status of uncashed checks at the request of Commission staff.  The Distribution Agent may reissue such checks subject to the time limits detailed herein.

Disposition of Undistributed Funds

93.     If funds remain following the initial distribution and payment of all Administrative Costs, the Distribution Agent, in consultation with the Commission staff, may seek subsequent distribution of any available remaining funds, pursuant to a Court Order.

94.     A residual within the Fair Fund will be established for any amounts remaining after the final disbursement to Payees from the Fair Fund (the "Residual").  The Residual may include funds from, among other things, amounts remaining in the Reserve, distribution checks that have not been cashed, checks or electronic payments that were not delivered or returned to the Commission, tax refunds for overpayment or for waiver of IRS penalties.

95.     All funds remaining in the Residual that are infeasible to distribute to investors will be returned to the Commission, pending a final accounting.  Upon completion of the final accounting, the Commission staff will file a motion with this Court to approve the final accounting, which will include a recommendation as to the final disposition of the Residual.  If distribution of

the Residual to investors is infeasible, the Commission staff may recommend the transfer of the Residual to the general fund of the U.S. Treasury subject to Section 21F(g)(3) of the Exchange Act.

Administrative Costs

96.     The Distribution Agent is entitled to reasonable administrative fees and expenses in connection with the administration and distribution of the Fair Fund (including any such fees and expenses incurred by agents, consultants or third-parties retained by the Distribution Agent in furtherance of its duties), which shall be invoiced, approved, and paid from the Fair Fund, pursuant to the Court's May 12, 2021 Order.  ECF No. 55.

97.     Pursuant to the Court's Order entered on February 26, 2020, the Tax Administrator will invoice all taxes and fees and expenses for the administration of the Fair Fund directly to Commission staff, and the Commission staff shall approve and arrange payment of those taxes and fees and expenses of the Tax Administrator from the Fair Fund, without further Court Order.  ECF No. 53.

98.     Any other Administrative Costs shall be paid from the Fair Fund, pursuant to a Court Order and shall be reflected in the final accounting referenced below.

Accountings

99.     The Distribution Agent shall provide to Commission staff, a progress report, pursuant to and in a format to be provided by Commission staff, within forty-five (45) days of Court approval of this Distribution Plan, and shall provide additional progress reports within twenty (20) days after the end of every quarter thereafter, and a final report when its duties are completed.  The Commission staff shall provide these reports to the Court upon request.

100.    The progress reports shall inform the Court and the Commission staff of the activities and status of the Fair Fund during the relevant reporting period, and once funds are transferred to the Bank it will specify, at a minimum: (a) the location of the account(s) comprising the Fair Fund; and (b) an interim accounting of all monies in the Fair Fund as of the most recent month-end, including the value of the account(s), all monies earned or received into the account(s),

funds distributed to Payees, and any monies expended from the Fair Fund to satisfy any fees, costs, taxes and other expenses incurred in the implementation of this Plan.

101.    Upon completion of all distributions to Payees and payment of all Administrative Costs, pursuant to the procedures described above, the Distribution Agent shall transfer all remaining funds to the Commission, and submit a final accounting for approval by the Court on a standardized form provided by the Commission staff.  The Distribution Agent will also submit a report to the Commission staff containing the final distribution statistics regarding distributions to individuals and entities, and such other information requested by the Commission staff.

Termination of the Fair Fund

102.    The Commission staff will seek an Order from the Court, as appropriate, approving the final accounting, discharging the Distribution Agent, disposing of the Residual, and terminating the Fair Fund.

103.    The Fair Fund will be eligible for termination and the Distribution Agent will be eligible for discharge after all of the following have occurred (a) a final accounting, in a standard accounting format provided by the Commission staff, has been submitted to and approved by the Court; (b) all Administrative Costs have been paid; and (c) the Court has approved the Commission staff's recommendation as to the final disposition of the Residual.

104.    Once the Fair Fund has been terminated, no further claims will be allowed and no additional payments will be made whatsoever.

Miscellaneous

105.    The Distribution Agent is entitled to rely on all outstanding rules of law and Court orders.  The Distribution Agent will not be liable to anyone, except the Commission on behalf of the Fair Fund for a pecuniary loss to the Fair Fund, for any action taken or omitted by the Distribution Agent in connection with the Plan and all Preliminary Claimants will have no claims against the Distribution Agent, its employees, agents, and attorneys in connection with the Plan and the administration of the Fair Fund, and will be deemed enjoined from prosecuting or asserting any such claims, except upon a finding by this Court of gross negligence or reckless disregard of

duty under this Plan.

106.    All proceedings with respect to the administration, processing, and determination of claims and the determination of all related controversies, shall be subject to the exclusive jurisdiction of this Court.

107.    Should any additional funds be received pursuant to Commission or Court order, agreement, or otherwise, prior to the Court's termination of the Fair Fund, such funds will be added to the Fair Fund and distributed, if feasible, in accordance with the Plan.

Wind-down and Document Retention

108.    The Distribution Agent will shut down the website, P.O. Box and customer service telephone line(s) established specifically for the administration of the Fair Fund six (6) months after the transfer of any remaining funds to the Commission, or at such earlier time as the Distribution Agent determines with the concurrence of the Commission staff.

109.    The Distribution Agent will retain all materials submitted by Preliminary Claimants in either paper or electronic form for a period of six (6) years from the date of approval of a final fund accounting.  Materials maintained in electronic form must be accessible and readable for the duration of retention.  Pursuant to the Commission staff's direction, the Distribution Agent will either turn over to the Commission or destroy all materials, including documents in any media, upon expiration of this period.