**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION** | : |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : **No. 1:18-cv-8865-AJN** |
| | : |
| **ELON MUSK** | : |
| | : |
| Defendant. | : |

## <u>UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S OPPOSITION TO DEFENDANT ELON MUSK'S MOTION TO QUASH AND TO TERMINATE CONSENT DECREE</u>

**TABLE OF CONTENTS**

TABLE OF CONTENTS.............................................................................................................ii

TABLE OF AUTHORITIES ....................................................................................................iii

INTRODUCTION…………………………………………………………………...…1

FACTUAL AND PROCEDURAL BACKGROUND………………………………………....2

   I.   *SEC v. Musk* and *SEC v. Tesla*……………………………………….…………....2

   II.  The Formal Order of Investigation and the SEC's Administrative Subpoena to Musk

ARGUMENT…………………………………………………………………………...5

   I.   There Is No Basis to Quash the SEC's Administrative Subpoena to Musk……..............5

      A.    Federal courts lack jurisdiction to quash an SEC administrative subpoena, except in a subpoena enforcement proceeding initiated by the SEC………………………………………………………………………..5

      B.    The SEC's administrative subpoena to Musk was lawfully issued pursuant to a Formal Order of Investigation………………………………………………....6

      C.    Musk's allegations of bad faith are wholly without merit……………………….10

   II.  There Is No Basis to Vacate Any Portion of the Musk Amended Final Judgment……...11

      A.    Musk cannot show a significant change in circumstances…...…………………11

          1.   Musk's First Amendment argument fails…..……………………………12

          2.   Musk's claim of economic duress lacks merit…………..……………14

          3.   Compliance with the Amended Final Judgment is neither onerous nor unworkable……………………………………………………………16

      B.    Musk's proposed solution is not suitably tailored to the asserted "changed circumstance"……………………………………………………………17

CONCLUSION…………………………………………………………………………...18

# TABLE OF AUTHORITIES

## CASES

*Calderon v. Wambua*,
   No. 74 Civ. 4868 (LAP), 2012 WL 1075840 (S.D.N.Y. Mar. 28, 2012) ................................. 12

*Carson v. Simon*,
   978 F.3d 1051 (8th Cir. 2020) .............................................................................................. 14

*Cent. Hardware Co. v. N.L.R.B.*,
   407 U.S. 539 (1972) ............................................................................................................. 13

*Consumer Health Info. Corp. v. Amylin Pharms., Inc.*,
   54 F. Supp. 3d 1001 (S.D. Ind. 2014), *aff'd,* 819 F.3d 992 (7th Cir. 2016) ...................... 14, 15

*In re Exec. Life Ins. Co.*,
   32 Cal. App. 4th 344 (Ct. App. 1995) ................................................................................... 15

*Finazzo v. SEC*,
   No. 08 Civ. 2176, 2008 WL 3521351 (S.D.N.Y. Aug. 8, 2008), *aff'd*, 360 F. App'x 169 (2d
   Cir. 2009) .............................................................................................................................. 6

*Grenda v. SEC*,
   No. 17 Civ. 536, 2017 WL 4053821 (W.D.N.Y. Sept. 14, 2017) ........................................... 10

*Lerman v. SEC*,
   928 F. Supp. 2d 798 (S.D.N.Y. 2013) ..................................................................................... 7

*Loce v. Time Warner Ent. Advance/Newhouse P'ship*,
   191 F.3d 256 (2d Cir. 1999) .................................................................................................. 13

*Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
   135 F.3d 266 (3d Cir. 1998) ................................................................................................... 9

*Philippine Exp. & Foreign Loan Guarantee Corp. v. Chuidian*,
   218 Cal. App. 3d 1058, 267 Cal. Rptr. 457 (Ct. App. 1990), *reh'g denied and opinion
   modified* (Apr. 13, 1990)) .................................................................................................... 14

*Rich & Whillock, Inc. v. Ashton Dev., Inc.*,
   157 Cal. App. 3d 1154 (1984) ............................................................................................... 14

*RNR Enters. Inc. v. SEC*,
   122 F.3d 93 (2d Cir. 1997) ................................................................................................... 6, 7

*Rufo v. Inmates of Suffolk Cty. Jail*,
   502 U.S. 367 (1992) .................................................................................................. 11, 12, 14

*SEC v. Alexander*,
    No. 06 Civ. 3844, 2013 WL 5774152 (E.D.N.Y. Oct. 24, 2013) ......................................... 12, 15

*SEC v. Brigadoon Scotch Distrib. Co.*,
    480 F.2d 1047 (2d Cir. 1973) ........................................................................................... 6, 7

*SEC v. Conradt*,
    309 F.R.D. 186 (S.D.N.Y. 2015), *aff'd*, 696 F. App'x 46 (2d Cir. 2017) ........................... 15, 17

*SEC v. ESM Gov't Secs., Inc.*
    645 F.2d 310 (5th Cir. 1981) .................................................................................................. 6

*SEC v. Jerry T. O'Brien, Inc.*,
    467 U.S. 735 (1984) ....................................................................................................... 6, 16

*SEC v. Knopfler*,
    658 F.2d 25 (2d Cir. 1981) ..................................................................................................... 7

*SEC v. Romeril*,
    15 F.4th 166 (2d Cir. 2021). .............................................................................................. 13

*SEC v. Sears*,
    No. 05 Civ. 728, 2005 WL 5885548 (D. Or. July 28, 2005) ................................................... 6

*SEC v. Waymack*,
    358 F. Supp. 3d 56 (D.D.C. 2019) ........................................................................................ 6

*Sprecher v. Graber*,
    716 F.2d 968 (2d Cir. 1983) ............................................................................................. 5, 6

*Superintendent of Ins. v. Bankers Life & Cas. Co.*,
    404 U.S. 6 (1971) .................................................................................................................. 9

*Treats Int'l Enterprises, Inc. v. SEC*,
    828 F. Supp. 16 (S.D.N.Y. 1993)………………………………………………………6

*United States v. Eastman Kodak Co.*,
    63 F.3d 95 (2d Cir. 1995) ................................................................................................... 12

*United States v. Int'l Bhd. of Teamsters*,
    247 F.3d 370 (2d Cir.2001) ................................................................................................ 11

*United States v. Quattrone*,
    402 F.3d 304 (2d Cir. 2007) ............................................................................................... 14

iv

Plaintiff United States Securities and Exchange Commission (the "Commission" or "SEC") respectfully submits this Opposition to Elon Musk's motion to quash the SEC's administrative subpoena and to vacate or modify the Amended Final Judgment (Dkt. No. 71).

## INTRODUCTION

Musk's motion to quash is procedurally defective and substantively meritless. The SEC issued its November 29, 2021 administrative subpoena to Musk pursuant to its authority under Section 21(b) of the Securities Exchange Act of 1934 ("Exchange Act") in the course of an investigation, not pursuant to the Federal Rules of Civil Procedure in the course of a litigation. A motion to quash is therefore not a proper procedural vehicle for challenging the validity of the subpoena. Rather, the exclusive method for contesting an administrative subpoena is to file an opposition in a subpoena enforcement action, which the SEC has not initiated.

Moreover, there is no valid substantive basis to challenge the subpoena. The SEC, which is vested with broad authority and discretion to investigate possible violations of the federal securities laws, has a legitimate purpose in investigating: (1) whether Tesla is maintaining appropriate disclosure controls and procedures as required by the federal securities laws; (2) whether Musk is complying with Tesla's disclosure controls and procedures, including whether he complied with Tesla's pre-approval requirement before he issued a pair of tweets on November 6, 2021, promising to sell 10% of his holdings of Tesla stock if a majority of Twitter users who participated in a poll voted "yes" to that proposition; and (3) whether Tesla's disclosures in SEC filings accurately described the company's compliance with its disclosure controls and procedures. Musk's objection to the subpoena is frivolous.

Musk's motion to set aside all or part of the Court's Amended Final Judgment in this case (Dkt. No. 47) is equally unavailing because Musk cannot meet the high burden for setting aside

or modifying a judgment under Rule 60(b).[1] Musk complains about "the sheer number of demands" by the SEC from 2018 to the present, which he characterizes as harassment. But Musk's own chronology of alleged demands is both underwhelming and reflects legitimate inquiries as to new potentially violative conduct by Tesla and Musk – including the conduct that gave rise to the SEC's 2018 enforcement actions.

Moreover, modifying Musk's Amended Final Judgment would not free him from scrutiny over his Tesla-related tweets. As an officer of the company, Musk would still be subject to Tesla's disclosure controls and procedures, and Tesla would still be required to maintain those procedures under Rule 13a-15 of the Exchange Act. So long as Musk and Tesla use Musk's Twitter account to disclose information to investors, the SEC may legitimately investigate matters relating to Tesla's disclosure controls and procedures, including Musk's tweets about Tesla, as well as the accuracy of Tesla's public statements about its controls and procedures.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     *SEC v. Musk* and *SEC v. Tesla*

On September 27, 2018, the SEC filed its Complaint in this case, alleging that Musk had violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder through a series of false and misleading tweets regarding having funding secured to take Tesla private at $420/share. Dkt. No. 1. On September 29, 2018, the SEC also filed a Complaint against Tesla alleging a violation of Exchange Act Rule 13a-15 (17 C.F.R. § 240.13a-15) for failing to implement disclosure controls and procedures to assess whether information disseminated by Musk through his Twitter account was required to be disclosed in SEC reports. *SEC v. Tesla*, No. 18-cv-8947-AJN, Dkt.

---

[1] In his Motion, Musk collectively refers to the *SEC v. Musk* October 2018 Final Judgment (Dkt. No. 14) ("Final Judgment") and the April 2019 Order Amending Final Judgment (Dkt. No. 47) ("Amended Final Judgment") as "the consent decree."

No. 1.

On September 29, 2018, after the parties reached a settlement, the SEC filed consents of Musk and Tesla to entry of judgment in *SEC v. Musk* (Dkt. No. 6) and *SEC v. Tesla* (*Tesla* Dkt. No. 3). At the Court's request, on October 11, 2018, the parties filed joint briefs in support of entry of the proposed judgments. Dkt. No. 13; *Tesla* Dkt. No. 11. The Court entered final judgments in each case on October 16, 2018. Dkt. No. 14; *Tesla* Dkt. No. 14.

In their respective final judgments, Tesla agreed to implement mandatory disclosure controls and procedures to oversee and pre-approve Musk's Tesla-related written communications that reasonably could contain information material to the company or its shareholders (*Tesla* Dkt. No. 14), and Musk, in turn, agreed to comply with those controls and procedures. Dkt. No. 14.

On February 19, 2019, Musk posted a tweet containing new information about Tesla's anticipated production for 2019. Dkt. No. 18, p. 8. After the SEC confirmed that Musk had not obtained pre-approval for the tweet, it applied for an order to show cause why Musk should not be held in contempt for violating the terms of the Court's Final Judgment. *Id.*, pp. 8-9. In his response to the Court's order to show cause, Musk argued, among other things, that requiring pre-approval of certain of his tweets constituted a prior restraint on his freedom of speech and violated his First Amendment rights. Dkt. No. 27, pp. 20-21.

At the Court's instruction, the parties conferred and ultimately agreed to amend the final judgments in both cases to more precisely define the categories of information for which Musk needed to seek pre-approval for his tweets. Specifically, Tesla agreed to implement, and Musk agreed to comply with, mandatory disclosure controls and procedures governing Musk's written communications regarding a list of topics, including "events regarding the Company's securities

(including Musk's acquisition or disposition of the Company's securities)." Dkt. No. 47, *Tesla* Dkt. No. 17.

## II. The Formal Order of Investigation and the SEC's Administrative Subpoena to Musk

On November 16, 2021, the SEC issued an Order Directing Private Investigation and Designating Officers to Take Testimony ("Formal Order of Investigation" or "Formal Order") authorizing SEC staff to investigate, among other things, Tesla's ongoing compliance with Rule 13a-15. Dkt. No. 69-3 (under seal). Pursuant to that authority, on November 16, 2021, the SEC staff issued an administrative subpoena to Tesla (Dkt. No. 69-2, under seal), and on November 29, 2021, the SEC staff issued an administrative subpoena to Musk (Dkt. No. 69-1, under seal). The subpoenas and cover letters explicitly refer to a non-public SEC investigation file number, state that the subpoenas were issued pursuant to that investigation, and refer to the "Formal Order authorizing this investigation." *E.g.*, Dkt. No. 69-1, p. 7. They do not bear the caption for *SEC v. Musk* or *SEC v. Tesla*.

 The Tesla subpoena calls for the production of, among other things, "[f]rom April 30, 2019 to the present, all Documents and Communications Concerning any pre-approval or review, before publication, of public statements or communications of Tesla executives by Tesla's General Counsel or Securities Counsel, or any counsel acting in either capacity." Dkt. No. 69-2, p. 12.

The Musk subpoena calls for the production of, among other things:

> 3. All Documents and Communications Concerning:
> a. the written communication published by you on Twitter at 12:17 pm PT on November 6, 2021, that stated, "Much is made lately of unrealized gains being a means of tax avoidance, so I propose selling 10% of my Tesla stock. Do you support this? Yes or No." ("the 12:17 tweet"); or
> b. the written communication published by you on Twitter at 12:23 pm PT on November 6, 2021, that stated, "I will abide by the results of this poll, whichever way it goes." ("the 12:23 tweet").

4. Documents related in any way to submission of the 12:17 tweet and/or the 12:23 tweet to Tesla's General Counsel or Securities Counsel, or any counsel acting in either capacity, for pre-approval or review before they were published.

Dkt. No. 69-1, p. 11.

Tesla has not objected to the SEC's administrative subpoena to it and is producing responsive documents. Musk has agreed to produce documents responsive to some categories in the subpoena to him, but his counsel informed the SEC staff on February 25, 2022 that Musk would not produce any documents regarding pre-approval or review of his tweets. At this time, the SEC staff has not commenced a subpoena enforcement action to compel Musk's compliance with the subpoena.

## ARGUMENT

### I.   There Is No Basis to Quash the SEC's Administrative Subpoena to Musk.

### A.   Federal courts lack jurisdiction to quash an SEC administrative subpoena, except in a subpoena enforcement proceeding initiated by the SEC.

Federal courts lack jurisdiction to quash an administrative subpoena issued by the SEC, except during a proceeding initiated by the SEC pursuant to 15 U.S.C. § 78u(c) to enforce compliance with its subpoenas.[2] *Sprecher v. Graber*, 716 F.2d 968, 974-75 (2d Cir. 1983) (affirming dismissal of suit to enjoin an SEC investigation and confirming that "Section 78u(c) is the exclusive method by which the validity of SEC investigations and subpoenas may be tested in the federal courts"). "Parties who are the subject of such subpoenas are free in a proceeding under that section to raise claims of abuse of process," but are barred by the doctrine of

---

[2] Musk claims that the SEC staff has taken the position that its subpoenas are issued under the consent decree. *See* Motion at 14 ("Nor can the Commission invoke the consent decree itself as imbuing it with authority to issue its own administrative subpoenas to investigate compliance"), 20 ("As the SEC has understood the consent decree and its ability to issue administrative subpoenas thereunder . . . "). This is incorrect; the SEC staff has repeatedly told counsel that the subpoenas were issued under the authority granted by the Formal Order of Investigation.

sovereign immunity from bringing their own actions against the SEC. *Id.* Courts have repeatedly rejected attempts by subpoena recipients to stop or interfere with SEC investigations. *See, e.g.*, *Treats Int'l Enterprises, Inc. v. SEC*, 828 F. Supp. 16, 19 (S.D.N.Y. 1993) (dismissing action to enjoin SEC investigation); *Finazzo v. SEC*, No. 08 Civ. 2176, 2008 WL 3521351, at *1 (S.D.N.Y. Aug. 8, 2008) (Sullivan, J.), *aff'd*, 360 F. App'x 169 (2d Cir. 2009) (dismissing action by subpoena recipient to prevent the SEC from using certain information in its investigation).

*Sprecher* is controlling Second Circuit law and requires the denial of Musk's motion to quash. *See* 716 F.2d at 974-75. Notably, Musk offers no authority to the contrary, and instead relies entirely on cases initiated by the SEC under Section 78u(c). *See* Motion at 5 (citations to *RNR Enters. Inc. v. SEC*, 122 F.3d 93, 98 (2d Cir. 1997) (affirming the district court's order enforcing an SEC subpoena in a Section 78u(c) proceeding); *SEC v. Brigadoon Scotch Distrib. Co.*, 480 F.2d 1047, 1057 (2d Cir. 1973) (same); *SEC v. ESM Gov't Secs., Inc.*, 645 F.2d 310, 311 (5th Cir. 1981) (appeal from an SEC subpoena enforcement proceeding); *SEC v. Waymack*, 358 F. Supp. 3d 56, 60 (D.D.C. 2019) (SEC subpoena enforcement proceeding); *SEC v. Sears*, No. 05 Civ. 728, 2005 WL 5885548, at *1 (D. Or. July 28, 2005) (same)). The Court should deny Musk's motion to quash the SEC's administrative subpoena.

**B.    The SEC's administrative subpoena to Musk was lawfully issued pursuant to a Formal Order of Investigation.**

Setting aside that Musk has not raised his objections in the proper forum, his substantive challenges to the SEC's subpoena are meritless. Courts have long recognized that "Congress has vested the SEC with broad authority to conduct investigations into possible violations of the federal securities laws and to demand production of evidence relevant to such investigations." *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984) (citing 15 U.S.C. §§ 77s(b), 78u(a), (b)). "SEC investigations are authorized 'in its discretion' by 15 U.S.C. § 78u(a) (1976)," *Sprecher*,

716 F.2d at 974, and the existence of a Formal Order of Investigation, as exists here, into possible violations of the federal securities laws provides a "demonstrable reason to believe that the SEC is pursuing a legitimate investigation." *Lerman v. SEC*, 928 F. Supp. 2d 798, 802 (S.D.N.Y. 2013) (internal quotation marks omitted). *See also RNR Enters.*, 122 F.3d at 97 ("The Formal Order reflects a legitimate investigatory purpose.") (citing 15 U.S.C. § 78u(a)(1)).

Given the SEC's broad, discretionary authority to investigate, "[t]he respondent opposing enforcement [of a subpoena in a Section 78u(c) action] must shoulder the burden of showing that the subpoena is 'unreasonabl[e]' or was issued in bad faith or for an 'improper purpose,' or that compliance would be '*unnecessarily* burdensome.'" *Id.* (quoting *Brigadoon Scotch*, 480 F.2d at 1056). "[W]here, as here, the agency inquiry is authorized by law and the materials sought are relevant to the inquiry, that burden is not easily met." *Brigadoon Scotch*, 480 F.2d at 1056. *See also SEC v. Knopfler*, 658 F.2d 25, 25 (2d Cir. 1981) (noting that the respondent "has a heavy burden if he seeks denial of enforcement on the ground that the subpoena is sought for an invalid purpose") (citing *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316 (1978)).

Here, the Formal Order of Investigation authorizes the SEC to conduct an investigation as to a number of areas, including Tesla's compliance with the disclosure controls and procedures requirements of Rule 13a-15 of the Exchange Act, and the accuracy of Tesla's representations in SEC filings as to the company's maintenance of and ongoing compliance with those disclosure controls and procedures. Both of these are legitimate areas of inquiry related to the statutes and rules within the SEC's jurisdiction.

*Tesla's Disclosure Controls and Procedures*

As part of the settlement in *SEC v. Tesla*, Tesla consented to the entry of a permanent injunction barring it from future violations of Exchange Act Rule 13a-15. *Tesla* Dkt. Nos. 14, 17. Tesla also adopted new or enhanced disclosure controls and procedures in December 2018, including its Senior Executives Communications Policy, which required executives including Musk to submit for pre-approval certain written public communications, including tweets. Dkt. No. 18-1 (Ex. 1). The categories of topics for which pre-approval is required were revised in April 2019 to include, among other categories, "events regarding the Company's securities (including Musk's acquisition or disposition of the Company's securities)." *Tesla* Dkt. No. 17; *see also* Tesla, Inc. Quarterly Report (Form 10-Q) (July 29, 2019) at 50 (citing changes made in connection with the Amended Final Judgment when discussing its "disclosure controls and procedures pursuant to Rule 13a-15").

Musk claims there is no precedent in "the SEC's history of enforcement" for applying Rule 13a-15 to weaknesses in controls or procedures over the types of disclosures the SEC is currently investigating. *See* Motion at 12. In support of this position, Musk cites three SEC actions between 2018 and 2021, each of which included Rule 13a-15 violations as applied to disclosure controls directly tied to SEC filings (*i.e.*, not disclosure controls over tweets by executives). *Id.* But in two prior filed actions, including the SEC's prior case against Tesla, the SEC charged companies with violating Rule 13a-15 in connection with tweets made by their executives. *Tesla* Dkt. No. 1; *In the Matter of Nikola Corp.*, Release No. 93838 (Dec. 21, 2021). Moreover, there is no principled reason to apply Rule 13a-15 to disclosure controls over tweets more narrowly than to disclosure controls over other means of public communications. Novel or atypical factual applications do not provide immunity from the federal securities laws. *Cf.*

*Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 10 n.7 (1971) (citing *A.T. Brod & Co. v. Perlow*, 375 F.2d 393, 397 (2d Cir. 1967)); *Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 274 (3d Cir. 1998).

### *Tesla's Representations in SEC Filings*

Tesla has repeatedly represented in SEC filings that, as part of the 2018 settlement, it "made further enhancements to [its] disclosure controls and other corporate governance-related matters," and that it intended to "continue to comply with the terms and requirements of the settlement." *See, e.g.*, Tesla, Inc. Annual Report (Form 10-K) (Feb. 4, 2022) at 26; Tesla, Inc. Form 10-Q (Oct. 25, 2021) at 56.

Musk, however, now claims that the SEC cannot investigate potential securities law violations relating to Tesla's disclosure controls and procedures because the company "implement[ed]" the required mandatory disclosure controls and procedures in 2018 and 2019. Motion at 13. Musk thus seems to suggest that, in his view, Tesla's settlement in 2018 implicitly barred the SEC from conducting any future investigations related to Tesla's compliance with Rule 13a-15, and that the federal securities laws and the Amended Final Judgment in *SEC v. Tesla* (Dkt. No. 17) do not require Tesla to take any steps to maintain—or ensure that Musk actually *complies with*—the company's new mandatory controls and procedures. The SEC disagrees. As SEC counsel has repeatedly informed Musk's and Tesla's counsel, the staff is conducting an investigation relating to potential federal securities law violations, including potential violations of the provisions identified in the Formal Order of Investigation. Musk's claim that Tesla has not violated the federal securities laws is not a basis for impeding the SEC's investigation.

### C.      Musk's allegations of bad faith are wholly without merit.

There is also no merit to any of Musk's overlapping allegations of bad faith. First, Musk
argues that the administrative subpoena is improper because the SEC may only obtain documents
touching on conduct related to the *SEC v. Musk* case through subpoenas issued under the
authority of this Court. Motion at 16. He is wrong. The SEC has the authority to subpoena
documents related to its ongoing investigation pursuant to the Formal Order of Investigation. The
fact that the possible violations under investigation might, if true, also constitute violations of a
prior settlement does not undermine the validity of the investigation. *See, e.g.*, *Grenda v. SEC*,
No. 17 Civ. 536, 2017 WL 4053821, at *3 (W.D.N.Y. Sept. 14, 2017) (holding that the SEC's
investigation of a potential violation of a prior settlement was "a legitimate inquiry, plain and
simple"). Moreover, the amendment of Tesla's disclosure controls and procedures as part of the
settlement in this case did not implicitly prohibit all future SEC investigations related to Tesla's
or Musk's conduct implicating those procedures, or place such investigations under this Court's
oversight.

Second, Musk contends that the SEC is engaging in a campaign of "harassment." Motion
at 17. This assertion is baseless. Musk complains about the "sheer number of . . . demands" by
the SEC. Motion at 17-18. But a review of this list of "demands" fails to support such a
conclusion:

- The first five items all relate to the original enforcement actions alleging Musk's
  violations of Section 10(b) and Rule 10b-5 thereunder and Tesla's violation of Rule 13a-
  15 in connection with Musk's fraudulent take-private tweets, which Musk and Tesla
  settled.

- The next two items relate to the SEC's discovery that Musk was not actually complying
  with Tesla's mandatory tweet pre-approval procedures, leading up to the Amended Final
  Judgments.

- The December 4, 2019 item marks the closing of an SEC investigation (i.e. not a "demand" to Musk or Tesla at all).

- The next two items (in 2020) consist of a voluntary inquiry to Tesla (not Musk) relating to a May 2020 Musk tweet, and a document retention request from the SEC to Tesla related to that inquiry. This Court generally instructed the parties to meet and confer on matters related to compliance with the Court's orders; these two items reflect the SEC doing just that.

- The final three items (in 2021) relate to the current investigation; only one of them—the subpoena at issue here—was a "demand" to Musk.

This list of events shows that the SEC has reacted reasonably to new instances of conduct by Tesla and Musk that could implicate the federal securities laws, and responded appropriately through voluntary requests for information, administrative subpoenas, and enforcement actions, pursuant to the SEC's broad authority to conduct investigations and bring actions.

**II. There Is No Basis to Vacate Any Portion of the Musk Amended Final Judgment.**

    **A.**    **Musk cannot show a significant change in circumstances.**

Musk moves the Court pursuant to Rule 60(b)(5) to vacate or modify the Amended Final Judgment (Dkt. No. 47), entered as part of his voluntary 2018 settlement with the SEC and amended in April 2019. Such a motion is "generally not favored and is properly granted only upon a showing of exceptional circumstances," *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) (affirming district court's denial of motion to set aside judgment based on newly discovered evidence), because a defendant cannot simply vacate a settlement whenever "it is no longer convenient to live with the terms of a consent decree," *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 383 (1992). Musk falls far short of this heavy burden.

Rule 60(b)(5) provides, in relevant part, that a court may relieve a party from a final judgment if "applying it prospectively is no longer equitable."[3] The party seeking a modification

---

[3] Rule 60(b)(5) also permits relief if "the judgment has been satisfied, released, or discharged; [or] it is based on an earlier judgment that has been reversed or vacated," but neither is applicable here.

must establish "either a significant change in factual conditions or in law," including "'(1) changed factual conditions make compliance with the decree substantially more onerous;' (2) 'a decree proves to be unworkable because of unforeseen obstacles;' or (3) 'enforcement of the decree without modification would be detrimental to the public interest.'" *Calderon v. Wambua*, No. 74 Civ. 4868 (LAP), 2012 WL 1075840, at *3 (S.D.N.Y. Mar. 28, 2012) (quoting *Rufo*, 502 U.S. at 384); *see also United States v. Eastman Kodak Co.*, 63 F.3d 95, 97-98 (2d Cir. 1995) (proceedings in 1994 to determine whether consent decrees entered decades ago in 1921 and 1954, respectively, should be vacated pursuant to Rule 60(b)(5)). This burden is "even harder to reach" where the movant seeks to set aside a consent judgment, because he has "the additional weight of demonstrating why a result that he chose is no longer fair." *SEC v. Alexander*, No. 06 Civ. 3844, 2013 WL 5774152, at *2-3 (E.D.N.Y. Oct. 24, 2013) (citing *Sampson v. Radio Corp. of Am.*, 434 F.2d 315, 317 (2d Cir. 1970)).

Musk's reasons for seeking vacatur of the Amended Final Judgment are (1) the pre-approval requirements in the decree restrict his speech; (2) he regrets that he decided to settle at a time when Tesla and his other companies were in a weaker financial position compared to the present; and (3) compliance with the decree is onerous and unworkable. Motion at 20-25. None of these arguments supports vacatur of the Amended Final Judgment. Accordingly, his motion to vacate the decree should be denied.

### 1.    Musk's First Amendment argument fails.

Musk contends that the Amended Final Judgment's requirement that Tesla pre-approve certain categories of his public communications about Tesla impinges on his First Amendment rights. Motion at 21-22.

First, Musk's First Amendment argument fails because it relies on the false premise that the SEC or this Court, rather than Tesla, is required to review and pre-approve certain of Musk's

public communications under Tesla's controls and procedures. The First Amendment limits only

state action, not private action. *Cent. Hardware Co. v. N.L.R.B.*, 407 U.S. 539, 547 (1972); *Loce*

*v. Time Warner Ent. Advance/Newhouse P'ship*, 191 F.3d 256, 266 (2d Cir. 1999). Here, it is

Tesla's disclosure controls and procedures, including the Senior Executives Communications

Policy, that Musk claims are restricting his speech.

Second, this argument ignores the critical fact that Musk—represented by experienced,

capable counsel—voluntarily consented to the entry of the court orders that established the pre-

approval requirement. Dkt. No. 6-1; 46-1. In the settlement context, defendants can choose to

bargain away their rights. *See SEC v. Romeril*, 15 F.4th 166, 172 (2d Cir. 2021). "The First

Amendment is no exception, and parties can waive their First Amendment rights in consent

decrees and other settlements of judicial proceedings." *Id.* In *Romeril,* the Second Circuit

affirmed the district court's refusal to modify a consent judgment in which the defendant agreed

not to deny the allegations in the SEC's complaint. *Id.* at 174-75. The court explained:

> The Judgment does not violate the First Amendment because Romeril waived his
> right to publicly deny the allegations of the complaint. A defendant in a civil
> enforcement action is not obliged to enter into a consent decree; consent decrees
> are normally compromises in which the parties give up something they might
> have won in litigation and waive their rights to litigation.

*Id.* at 172 (internal quotation and citations omitted). The same is true here. In consenting to both

the Final Judgment and the Amended Final Judgment, Musk *twice* elected not to litigate, and

instead voluntarily agreed to comply with Tesla's pre-approval policy. In so doing, he waived

any possible First Amendment objection to Tesla's pre-approval policy or the Amended Final

Judgment. The Amended Final Judgment did not violate the First Amendment when agreed to,

and no circumstances have changed to cause it to violate the First Amendment now.

Musk ignores *Romeril*, but offers no authority to the contrary. In fact, the cases cited in

his Motion (at 21-22) are readily distinguishable. *Rufo,* 502 U.S. at 374-75, concerned a consent decree requiring the sheriff of Suffolk County and other government authorities to operate a "suitable and constitutional jail" for pretrial detainees. *Carson v. Simon*, 978 F.3d 1051, 1061 (8th Cir. 2020), involved the constitutionality of a consent decree setting forth rules for counting absentee ballots in a presidential election. *United States v. Quattrone*, 402 F.3d 304, 306 (2d Cir. 2007), concerned an order by a district court barring reporters from publishing the names of jurors. None of these cases says anything about the freedom of civil litigants to bargain away their rights, including their First Amendment rights, in a settlement.

### 2.    Musk's claim of economic duress lacks merit.

Musk's claim that he consented to the Final Judgment while under economic duress fails on its face. He contends that, in 2018, he believed he had to settle with the SEC because protracted litigation might impede the ability of Tesla and his other companies to raise necessary capital. Motion at 24. That argument is insufficient as a matter of law to establish economic duress, which, as Musk acknowledges, requires a showing that one party engaged in "a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure." *Rich & Whillock, Inc. v. Ashton Dev., Inc*., 157 Cal. App. 3d 1154, 1158 (1984) (California law) (cited by Motion at 25); *accord Consumer Health Info. Corp. v. Amylin Pharms., Inc.*, 54 F. Supp. 3d 1001, 1006-07 (S.D. Ind. 2014) (cited by Motion at 25); *Philippine Exp. & Foreign Loan Guarantee Corp. v. Chuidian*, 218 Cal. App. 3d 1058, 1076 (Ct. App. 1990), *reh'g denied and opinion modified* (Apr. 13, 1990)) (cited by Motion at 25). "Acts that may constitute a wrongful act . . . include assertion of a claim known to be false, or a bad faith threat to breach a contract or to withhold a payment." *Consumer Health Info. Corp.*, 54 F. Supp. 3d at 1006. For instance, in *Rich & Whillock*, a general contractor refused to pay its sub-contractor the approximately $72,000 that was owed and instead forced the

14

sub-contractor to accept a compromise payment of $50,000. *See* 157 Cal. App. 3d at 1157. In contrast, "[m]erely being put to a voluntary choice of perfectly legitimate alternatives is the antithesis of duress." *In re Exec. Life Ins. Co.*, 32 Cal. App. 4th 344, 391 (Ct. App. 1995).

Musk does not allege any wrongful act committed by the SEC before he consented to the Final Judgment and the Amended Final Judgment. To the contrary, in Musk's signed consents filed with the Court, he explicitly represented that he "enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce [Musk] to enter into this Consent." Dkt. No. 6-1 ¶ 8 (Final Judgment); Dkt. No. 46-1 ¶ 3 (Consent for Final Amended Judgment). Musk did not make the decision to settle the 2018 action or amend the judgment in 2019 under economic duress.

Instead, facing the prospect of litigation against the SEC and pressure from large Tesla investors, Musk "for [his] own strategic purposes . . . with the advice and assistance of counsel, entered into these agreements voluntarily, in order to secure the benefits thereof, including finality." *SEC v. Conradt*, 309 F.R.D. 186, 188 (S.D.N.Y. 2015), *aff'd*, 696 F. App'x 46 (2d Cir. 2017); *see also Alexander*, 2013 WL 5774152, at *2 ("Defendant's early bargain with the SEC . . . spared him the time, expense, and potential embarrassment of litigation . . . ."); Dkt. No. 72 ¶ 8 (describing pressure from large Tesla investors "if the case was not settled expediently"). Musk's own cited authorities explain that "reasonable settlements of good faith disputes are . . . acceptable, even desirable, in our economic system and will not form the basis of an economic duress claim." *Consumer Health Info. Corp.*, 54 F. Supp. 3d at 1006-07. Musk's apparent regret today, over agreeing to the settlement back in 2018 and 2019, is not a basis under Rule 60(b)(5) for vacatur of the Amended Final Judgment.

### 3.      Compliance with the Amended Final Judgment is neither onerous nor unworkable.

The arguments made by Musk in support of his motion do not qualify as "significant changes" under *Rufo* and therefore do not justify vacatur of the Amended Final Judgment. Musk argues that the decree has become "onerous and unworkable" because, "[a]s the SEC has understood the consent decree and its ability to issue administrative subpoenas thereunder, it has assumed powers it would not otherwise have and used those powers to conduct never-ending investigations." Motion at 20. Musk has this exactly backwards. The SEC staff has repeatedly told Musk's counsel that the Musk subpoena is not issued under any claimed powers under the Amended Final Judgment, but rather under the authority of the Formal Order of Investigation.[4] As explained in Section I(B) *supra*, the SEC has broad statutory authority and discretion to investigate possible violations of the federal securities laws. *See, e.g.*, *Jerry T. O'Brien, Inc.*, 467 U.S. at 741. The SEC's issuance of an administrative subpoena authorized by a Formal Order of Investigation is not a change in circumstance that could justify vacating the Amended Final Judgment.

Relatedly, Musk complains about the "SEC's failure to uphold its side of the bargain." Motion at 21. It is entirely unclear what Musk is referencing here. The terms of the settlement between the SEC and Musk concerning his fraudulent take-private tweets are wholly contained within the Final Judgment and Amended Final Judgment ordered by the Court. There is no other bargain between the parties, and certainly no immunity from investigation as to future possible violations of the federal securities laws related to Musk's tweets or Tesla's related disclosure controls and procedures.

---

[4] *See also* Motion at 14 ("Nor can the Commission invoke the consent decree itself as imbuing it with authority to issue its own administrative subpoenas to investigate compliance."). The SEC staff has never taken this position and in fact has repeatedly told counsel the opposite.

**B.      Musk's proposed solution is not suitably tailored to the asserted "changed circumstance."**

Finally, Musk's proposed relief is not even a solution to his problems with the Amended Final Judgment. Were the Court to vacate the Amended Final Judgment in *SEC v. Musk*, Musk's tweets would still be subject to oversight from Tesla and the SEC. Tesla would remain subject to the requirements of Rule 13a-15 to maintain and evaluate the effectiveness of its disclosure controls and procedures, including as applied to Musk's tweets, to the extent Musk's Twitter account continues to be used to announce information about Tesla to the public. Whether Tesla's disclosure controls and procedures are sufficient to ensure the accuracy of information disclosed to the public, and whether Tesla accurately describes in public filings its efforts to maintain and ensure compliance with those controls and procedures, remain valid areas of investigation for the SEC, independent of any court orders.

In sum, in 2018, to settle the SEC's action against him, Musk agreed to comply with Tesla's mandatory procedures requiring pre-approval of certain of his Tesla-related public communications. Musk cannot now cast off the Amended Final Judgment simply because he has found complying with Tesla's procedures to be less convenient than he had hoped, or because he wishes the SEC would not investigate whether Tesla's disclosure controls and procedures are actually being maintained and followed. "When it comes to civil settlements, a deal is a deal, absent far more compelling circumstances than are here presented." *Conradt*, 309 F.R.D. at 188. Musk's motion to vacate or modify the Amended Final Judgment should thus be rejected.

## CONCLUSION

For the reasons stated above, the SEC respectfully requests that the Court deny Musk's

Motion to: (1) quash a portion of the November 29, 2021 administrative subpoena to Musk; and

(2) terminate or modify the April 30, 2019 Amended Final Judgment as to Musk.

Dated: March 22, 2022

*s/ Melissa Armstrong*
Melissa Armstrong
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549
(202) 551-4724
armstrongme@sec.gov

Of counsel:

Erin E. Schneider
Monique Winkler
Steven Buchholz
David Zhou
Robin Andrews

## CERTIFICATE OF SERVICE

I certify that on March 22, 2022, a copy of the foregoing was filed through the Court's

CM/ECF system, which will send copies to all counsel of record.


*s/* Melissa Armstrong
Melissa Armstrong