UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

        Plaintiff,

  v.

ELON MUSK,

        Defendant.

Civil Action No. 1:18-cv-08865-AJN

**DEFENDANT ELON MUSK'S REPLY IN FURTHER SUPPORT OF HIS
MOTION TO QUASH & TO TERMINATE CONSENT DECREE**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. THE CHALLENGED REQUESTS SHOULD BE QUASHED. ................................ 1

    A. This Court Has Jurisdiction Over The Challenged Requests. ........................ 1

    B. The Challenged Requests Have No Legitimate Investigatory Purpose. .......... 3

        1. The Formal Order Is Not Carte Blanche For Investigation Of Compliance With The Consent Decree. ................................................. 3

        2. Rule 13a-15 Does Not Give The SEC Unbridled License To Investigate Any And All Executive Communications. ......................... 4

    C. The Subpoena Was Issued In Bad Faith. ........................................................ 6

III. THE CONSENT DECREE SHOULD BE VACATED. ............................................. 7

    A. The Consent Decree Violates The First Amendment. .................................... 7

    B. The SEC's Wrongful Prosecution Cannot Be Recast As Mr. Musk's Regret. .............................................................................................................. 9

    C. The SEC Has Made Compliance Unworkable With Its Unrelenting Investigations And Demands For Privileged Documents. ............................ 9

    D. The SEC Confuses What Is Required By The Consent Decree And What The Securities Laws Mandate. .............................................................. 10

IV. CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Blum v. Yaretsky*,
    457 U.S. 991 (1982)............................................................................................... 7

*Citadel Broad. Co.*,
    Mem. Op. and Order, 17 F.C.C. Rcd 483 (2002) ................................................. 9

*Crosby v. Bradstreet*,
    312 F.2d 483 (2d. Cir. 1963) ............................................................................ 1, 8

*Exxon Mobil Corp. v. Schneiderman*,
    316 F. Supp. 3d 679 (S.D.N.Y. 2018).................................................................. 3

*Grenda v. S.E.C.*,
    2017 WL 4053821 (W.D.N.Y. Sept. 14, 2017)................................................ 2, 6

*Hampton v. S.E.C.*,
    2018 WL 4853902 (D.D.C. Oct. 5, 2018) ............................................................ 2

*In re Consol. Pretrial Proc. in Air W. Sec. Litig.*,
    436 F. Supp. 1281 (N.D. Cal. 1977) .................................................................... 9

*In re Marriage of Baltins*,
    212 Cal. App. 3d 66 (Ct. App. 1989) ................................................................... 9

*In re Zarnel*,
    619 F.3d 156 (2d Cir. 2010)................................................................................. 8

*In the Matter of Nikola Corp.*,
    Release No. 93838 (Dec. 21, 2021) ..................................................................... 5

*Krantz v. BT Visual Images, L.L.C.*,
    89 Cal. App. 4th 164 (2001) ................................................................................ 9

*Lerman v. S.E.C.*,
    928 F. Supp. 2d 798 (S.D.N.Y. 2013).................................................................. 2

*Lugar v. Edmondson Oil Co., Inc.*,
    457 U.S. 922 (1982)............................................................................................. 7

*Rich & Whillock, Inc. v. Ashton Dev., Inc.*,
    157 Cal. App. 3d 1154 (Ct. App. 1984)............................................................... 9

*RNR Enters., Inc. v. S.E.C.*,
    122 F.3d 93 (2d Cir. 1997)................................................................................... 3

*S.E.C. v. Romeril*,
    15 F.4th 166 (2d Cir. 2021) ................................................................................................ 7, 8

*United States v. Constr. Prod. Rsch., Inc.*,
    73 F.3d 464 (2d Cir. 1996) ..................................................................................................... 3

**RULES**

Guidance on the Use of Company Web Sites,
    73 Fed. Reg. 45862-01, 45873 (Aug. 1, 2008) ....................................................................... 5

SEC Release No. 33-8124, Certification of Disclosure in Companies' Quarterly and
    Annual Reports (2002) ............................................................................................................ 4

**OTHER AUTHORITIES**

Eminem, "Without Me" (2002) ........................................................................................................ 8

**I.      INTRODUCTION**

The SEC argues that it has unfettered authority to subpoena whatever it wants, whenever it wants, so long as it obtains a formal order. But the SEC's investigatory power has limits, especially once, as here, it is leveraging a binding order specially entered and superintended by this Court. The SEC seeks to justify its misconduct by relying on Rule 13a-15—a circumscribed rule that does not govern the conduct it is investigating: Mr. Musk's tweets. And the Second Circuit's binding precedent in *Crosby v. Bradstreet Co.*, 312 F.2d 483 (2d Cir. 1963), requires that the Court either terminate the consent decree or, at minimum, strike the constitutionally overbroad prior restraint on Mr. Musk's speech.

**II.     THE CHALLENGED REQUESTS SHOULD BE QUASHED.**

   **A.     This Court Has Jurisdiction Over The Challenged Requests.**

This Court plainly has jurisdiction over its judgments; the SEC's arguments to the contrary only seek to circumvent this Court's authority and directly police Mr. Musk's speech without answering to the one tribunal uniquely positioned to adjudicate disputes between these parties, over these issues. Dkt. No. 71 ("Mot.") at 1–2; *see also* Dkt. No. 65 (providing Mr. Musk may make a motion to quash). As this Court knows, the SEC entered into a bilateral, ongoing consent decree that this Court approved and continues to superintend between the parties. Thereafter, the SEC ran to this Court seeking relief when it believed that Mr. Musk did not comply with Tesla's disclosure controls, alleging a violation of the consent decree. *See* Dkt. No. 18. Now, the SEC is telling the Court that it lacks jurisdiction over the same claim. The SEC's actions are nothing more than improper forum shopping.

In its response, the SEC glaringly omits that its subpoenas specifically cite "the final judgment or amended final judgment in *S.E.C v. Musk*, 1:18-cv-8865-AJN (S.D.N.Y.)" and "the final judgment or amended final judgment in *S.E.C v. Tesla*, 1:18-cv-8947-AJN (S.D.N.Y.)."

1

*See* Mot. at 3; *see also infra* at 3–4 (SEC's misrepresentations of its subpoenas). Notably, Mr. Musk has *not* asked this Court to quash the portions of the subpoena unrelated to the consent decree. He merely seeks relief that this Court is specially situated to provide: supervision over a party to a consent decree issued by this Court. The SEC should no more be able to dodge such supervision than Mr. Musk can.

Further, the SEC provides no support for the jurisdictional bar it seeks to impose on pre-enforcement challenges to SEC subpoenas. The cases cited by the Commission pertaining to sovereign immunity are legally and factually inapposite. None involved the enforcement of a court-ordered consent decree; rather, all involved complaints alleging affirmative claims for abuse of process by the SEC and demanding declaratory and injunctive relief, as well as monetary damages. Dkt. No. 78 ("Resp.") at 5–6. Mr. Musk has not filed a complaint against the SEC nor sought monetary damages, and there is no question of sovereign immunity because the SEC voluntarily selected this Court as the forum for its suit when it could have filed an administrative proceeding. The SEC also filed the joint request for this Court to retain jurisdiction. Dkt. No. 13. Even outside the consent decree context, courts have considered motions to quash pre-enforcement administrative subpoenas on the merits, particularly when third-party rights are concerned, as here.[1] *See, e.g.*, *Grenda v. S.E.C.*, 2017 WL 4053821, at *2 (W.D.N.Y. Sept. 14, 2017); *Hampton v. S.E.C.*, 2018 WL 4853902, at *6 (D.D.C. Oct. 5, 2018); *Lerman v. S.E.C.*, 928 F. Supp. 2d 798, 805 (S.D.N.Y. 2013).[2]

Prudential concerns further support this Court's exercise of jurisdiction. It makes little sense to require that Mr. Musk "wait-and-see" if the SEC initiates a Section 78u(c) proceeding in

---

[1] Mr. Musk is a party to the consent decree, but he is a third-party subpoena recipient.

[2] Unless otherwise indicated, this brief omits from quotations and citations all internal quotation marks, footnotes, and citations.

2

in this Court or in another,[3] and potentially litigate a venue transfer motion, all for this issue to be re-briefed and decided in a posture substantively identical to the current one. *See Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 696 (S.D.N.Y. 2018) (declining to exercise prudential ripeness doctrine and ruling on motion to quash pre-enforcement subpoena where party had been producing documents in connection with prior subpoenas).

### B.   The Challenged Requests Have No Legitimate Investigatory Purpose.

The Commission offers roving references to its broad authority under the Formal Order, Rule 13a-15, and the judgment and amended judgment in this case to justify the Challenged Requests. But those authorities are each specific and bounded, and none—together or apart—supply the Commission the legitimate investigatory purpose required under law.

#### 1.   The Formal Order Is Not Carte Blanche For Investigation Of Compliance With The Consent Decree.

The Commission relies heavily on the Formal Order as legal basis for the Challenged Requests. *See, e.g.*, Resp. at 7; *see also id.* at 4–6, 9–10, 16. But the Formal Order is not itself evidence of the legitimacy of the subpoena, no matter how many times the Commission notes its existence. *See* Mot. at 8–9; *United States v. Constr. Prod. Rsch., Inc.*, 73 F.3d 464, 471 (2d Cir. 1996) (rejecting idea that "an agency may conduct any investigation it may conjure up"); *RNR Enters., Inc. v. S.E.C.*, 122 F.3d 93, 97 (2d Cir. 1997) (inquiring whether the formal order reflects a legitimate investigatory purpose). The Formal Order is not an open invitation for any fishing expedition the Commission may wish to pursue, and the Commission errs in assuming that a court may not look behind its veil.

To that end, the SEC twice denies that "its subpoenas are issued under the consent decree," instead stating unequivocally "the subpoenas were issued under the authority granted by

---

[3] When asked, the SEC would not commit to bring such an action before Your Honor.

the Formal Order of Investigation." Resp. at 5 n.2; *see also id.* at 16. To support that claim, the SEC points out that the Musk and Tesla subpoenas "refer to" the Formal Order, and "do not bear the caption for *S.E.C v. Musk* or *S.E.C v. Tesla*." Resp. at 4. While it may be strictly true that this case caption is not at the *top* of the Tesla subpoena, that subpoena *twice* asks for documents related to compliance with "the final judgment or amended final judgment in *SEC v. Musk*, 1:18-cv-8865-AJN (S.D.N.Y.)." Mot. at 3. It should suffice to note that the SEC is expressly trading off consent-decree provisions that are presided over by the very same Court that the SEC is claiming unfettered prerogatives to circumvent. Any such theory of this Court's authority—by which the SEC can leverage it without answering to it—is untenable.

### 2. Rule 13a-15 Does Not Give The SEC Unbridled License To Investigate Any And All Executive Communications.

The SEC pairs recitations to the Formal Order with similarly unsupported reliance on Rule 13a-15. The SEC has no authority for its naked assertion that a securities rule that governs after-the-fact disclosures in SEC filings *also* requires <u>pre-approval of tweets</u>.

First, the SEC argues a point of first-impression, that to comply with the disclosure controls and procedure requirements of Rule 13a-15, a company must pre-approve its executives' tweets. The SEC does not cite the Rule itself for this proposition; nor could it. There is no support in law for the Commission's propositions that (1) the rule requires pre-approvals of any kind, as opposed to after-the-fact disclosures of material information, or (2) a tweet constitutes a disclosure similar to an 8-K, 10-K, or 10-Q filing. Mot. at 9–13.[4] Even the SEC's guidance makes clear that only a narrow set of executive communications fall under the

---

[4] *See also* SEC Release No. 33-8124, Certification of Disclosure in Companies' Quarterly and Annual Reports (2002), *available at* https://www.sec.gov/rules/final/33-8124.htm (Rule 13a-15 was "intended to address the issuer's controls and procedures for recording, processing[,] summarizing and reporting the information that is required to be disclosed in Exchange Act reports.").

4

purview of a company's Rule 13a-15 disclosure controls—namely, those that are required in an Exchange Act report. *See* Commission's Guidance on the Use of Company Web Sites, 73 Fed. Reg. 45862-01, 45873-74 (Aug. 7, 2008) (listing examples of communications that may require an Exchange Act report, such as company's waiver of its code of ethics or board policy on director attendance at the annual meeting).

The SEC instead cites the Amended Judgment in this case, which requires pre-approval of certain types of executive communications. Indeed, that is only further evidence that the SEC seeks to investigate compliance with the *consent decree*, not Rule 13a-15. To the extent that the Commission seeks to rely on the Complaint in *S.E.C v. Tesla* and *In the Matter of Nikola Corp.*, Release No. 93838 (Dec. 21, 2021), those were settled matters that carry no precedential legal value; the SEC's theory that Rule 13a-15 covers tweets has never actually been resolved. In any event, the misconduct alleged in those cases—material misrepresentations—differs categorically from the communication at issue here, a Twitter poll. *See generally* Mot. at 11, 13–14.

Second, the SEC argues that Tesla's representations in its 10-Ks and 10-Qs provide basis for investigation. The SEC overstates Tesla's representations, *see* Mot. at 12–13, and again attempts to blur the distinction between Rule 13a-15 and the consent decree. Rule 13a-15 requires that Tesla make certain disclosures in Commission filings. Distinctly, the consent decree concerns pre-clearance of certain executive communications, including Mr. Musk's tweets, by Tesla's securities counsel. After a tweet is published (pre-approved or not), the SEC's only germane concern under Rule 13a-15 should be whether obligatory information is disclosed.[5] But nowhere in its brief does the SEC cite a single example of a communication (*e.g.*, a tweet)

---

[5] Under Rule 13a-15, the touchstone inquiry for whether a filing is necessary is materiality. In contrast, the Amended Judgment does not contain a materiality requirement and encompasses a broader category of information than what is covered under the Rule.

5

by Mr. Musk that contained information that Tesla was required to separately disclose in a filing with the Commission and did not—the crux of a Rule 13a-15 analysis.[6] And the SEC does not actually allege that the tweets it complains about independently violate securities laws. Instead, the SEC has based its investigation on whether or not tweets were pre-approved—a question that distinctly concerns the consent decree and not Rule 13a-15.

To the extent the SEC cites *Grenda v. S.E.C.* to suggest that it has the power to issue subpoenas and investigate whether a party is complying with a settlement—without any independent violation of the securities laws—that case is inapposite because it concerned a settlement in an SEC administrative proceeding and therefore did not implicate the ongoing supervisory authority of a federal court. Resp. at 10, 2017 WL 4053821, at *1. As discussed at length in the principal brief, the SEC may not make an end-run around this Court's supervision. Mot. at 12–16.

Nor has the SEC actually cited any support for its contention that the consent decree "require[s] Tesla to . . . ensure that Musk actually *complies with*—the company's new mandatory controls and procedures." Resp. at 9. Tesla is in fact complying with its obligations to institute disclosure controls. *See* Mot. at 13. That the Commission prefers to substitute its judgment for that of the independent directors whom the SEC *approved* to monitor disclosure controls says nothing about what the consent decree itself mandates.[7]

C.  **The Subpoena Was Issued In Bad Faith.**

The SEC reverts to claims of its purported broad authority in response to Mr. Musk's well-grounded claims of harassment. What the Commission calls "new instances of conduct . . .

---

[6] *See Tesla*, Dkt. 3-1 ¶ 6(c) (requiring Tesla securities counsel to make appropriate SEC filings following communications).

[7] *See Tesla*, Dkt. 3-1 ¶ 6(b) (requiring committee oversight of the judgment, "the charter and composition of [which] is subject to review and approval by the staff of the Commission").

6

that could implicate the federal securities laws," Resp. at 11, are nothing more than Mr. Musk's tweets of a truthful fact, an aspiration, an opinion, and a question—not material misrepresentations or fraud. Nor does the Commission address its leak of non-public information about this investigation, which alone speaks volumes about the SEC's bad faith conduct toward Mr. Musk. *See* Mot. at 19 n.4.

### III. THE CONSENT DECREE SHOULD BE VACATED.

Mr. Musk's arguments for vacatur of the consent decree are only further vindicated by the Commission's response to his motion. The SEC has advanced its investigations without regard for Mr. Musk's constitutional rights, the limits of its authority under Rule 13a-15, or the circumstances under which Mr. Musk signed the decree.

#### A. The Consent Decree Violates The First Amendment.

The Commission first attempts to evade scrutiny for its unconstitutional restraint on Mr. Musk's speech by arguing that an SEC-designed, court-enforced agreement involves no state action merely because the Commission has deputized a Tesla securities lawyer to pre-approve Mr. Musk's tweets. But it is irrelevant *whom* the SEC has tasked with this duty; Mr. Musk's speech is restrained as a result of the SEC's prosecution just the same. *See Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982) (state action can be found where the state exercises coercive power on the private actor, provides "significant encouragement", or transfers into private hands traditionally state powers); *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982) ("[T]he conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State.").

Next, the SEC again oversteps by claiming that, just because Mr. Musk agreed to the judgment and amended judgment in this case,[8] that he waived any right to challenge the SEC's

---

[8] In fact, Mr. Musk was not represented by counsel at the time of the amended judgment.

7

subsequent abuse of the settlement. The Commission misplaces reliance on *S.E.C v. Romeril*, 15 F.4th 166 (2d Cir. 2021), which created a deep intra-circuit split and is the subject of a currently pending petition for certiorari. But *Crosby v. Bradstreet Co.*, 312 F.2d 483, in which the Second Circuit vacated a consent decree on First Amendment grounds, remains the controlling law in this Circuit. *See In re Zarnel*, 619 F.3d 156, 168 (2d Cir. 2010) (law of the circuit rule). In *Crosby,* the Second Circuit held:

> with the power of a court of the United States to enjoin publication of information about a person, without regard to truth, falsity, or defamatory character of that information. Such an injunction, enforceable through the contempt power, constitutes a prior restraint by the United States against the publication of facts which the community has a right to know and which [plaintiff] had and has the right to publish. The court was without power to make such an order; *that the parties may have agreed to it is immaterial.*

*Id.* at 485 (emphasis added).

Notwithstanding, Mr. Romeril has asked the Supreme Court to resolve this split, correctly explaining that there is little more offensive to the First Amendment than a content-based lifetime ban on wholly truthful speech.[9] *Romeril*, 15 F.4th 166, *petition for cert. filed*, (U.S. Mar. 23, 2022) (No. 21-1284) (collecting cases holding courts lack power to enforce prior restraints and content and viewpoint-based speech restrictions as settlement conditions, even when entered with consent). Further, the broad swath of speech subject to pre-approval, and the SEC's continuing and harassing investigation of Mr. Musk's compliance with its prior restraint, raise additional concerns beyond the no-admit-no-deny gag order at issue in *Romeril*.

The First Amendment requires that agencies proceed with caution when constitutional rights are at stake, not seek to pursue any and all novel theories that broaden their authority at the

---

[9] *See generally* Ex. E to Mot. The intermittent nature of the SEC's harassment underscores the judgment's chilling effect because it is impossible to know *ex ante* what tweets will raise the Commission's ire. Even the SEC seems unsure of what tweets require preclearance, leaving only two conclusions: the consent decree is unduly vague or the agency is pursuing its investigation in bad faith.

8

cost of individual freedom. *Compare* Eminem, "Without Me" (2002) ("The [SEC] won't let me be or let me be me so let me see / They tried to shut me down . . .") *with Citadel Broad. Co.*, Mem. Op. and Order, 17 F.C.C. Rcd 483 (2002) (rescinding penalty against radio station for playing Eminem song and noting "the First Amendment is a critical constitutional limitation that demands we proceed cautiously and with appropriate restraint").

### B. The SEC's Wrongful Prosecution Cannot Be Recast As Mr. Musk's Regret.

The SEC attempts to recast its own coercive prosecution of Mr. Musk, but the Commission concedes that a wrongful act may create economic duress. Resp. at 14. *See Krantz v. BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 176 (2001), *as modified* May 22, 2001 ("Impermissible threats include bad faith threatened use of civil process."). And the Commission does not even seek to defend its initial prosecution of Mr. Musk for his truthful tweets regarding taking Tesla private. *See generally* Mot. at 24–25.

"[F]ear of financial ruin is uniformly recognized as a valid reason for submitting to another party's economic coercion." *In re Consol. Pretrial Proc. in Air W. Sec. Litig.*, 436 F. Supp. 1281, 1290 (N.D. Cal. 1977). While settlements undoubtedly offer consideration to both parties, like all contracts, that is no answer to a claim of coercion. "[A] reasonably prudent person subject to [a wrongful] act may have no reasonable alternative but to succumb when the only other alternative is bankruptcy or financial ruin." *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 1159 (Ct. App. 1984). And that the consent included a clause regarding its voluntary nature does not absolve the SEC of any wrongful conduct. *See In re Marriage of Baltins*, 212 Cal. App. 3d 66, 83 (Ct. App. 1989).

### C. The SEC Has Made Compliance Unworkable With Its Unrelenting Investigations And Demands For Privileged Documents.

The SEC again relies on vague citations to the Formal Order and its broad investigatory power to justify another investigation that is patently seeking evidence of compliance with the

9

consent decree. Resp. at 16; *supra* at 3–4. But the general investigative authority of the SEC does nothing to inform the Court about whether the consent decree is workable.

For example, the SEC has repeatedly demanded access to documents that are attorney-client communications or attorney work product. *See, e.g.*, Musk Subpoena (demanding production of "Documents related in any way to submission of the 12:17 tweet and/or the 12:23 tweet to Tesla's General Counsel or Securities Counsel, or any counsel acting in either capacity . . . ."). While Tesla and Mr. Musk have properly rebuked such efforts, the SEC has not relented and has repeatedly taken the position that communications and work product reflecting attorney advice regarding pre-approval are not privileged. Accordingly, as structured, compliance with the consent decree cannot be confirmed without testing the outer bounds of attorney-client privilege and the attendant constitutional concerns. *See also generally* Mot. at 16–20.

### D. The SEC Confuses What Is Required By The Consent Decree And What The Securities Laws Mandate.

The SEC takes the position that it may investigate any of Mr. Musk's tweets so long as he tweets about Tesla, regardless of whether the consent decree is vacated. Resp. at 17. As described above, the SEC misapprehends what disclosure controls and procedures Rule 13a-15 requires. *See supra* at 4–6. Moreover, if the SEC is correct that Rule 13a-15 requires procedures identical to the amended judgment, it is difficult to understand why the amended judgment should remain in force.

## IV. CONCLUSION

Mr. Musk respectfully requests the Court quash the Challenged Requests and terminate the consent decree.

| | |
|---|---|
| Dated: New York, New York<br>March 29, 2022 | Respectfully submitted,<br><br>/s/ Alex Spiro<br>Alex Spiro<br>QUINN EMANUEL<br>  URQUHART & SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>Telephone: (212) 849-7000<br>Facsimile: (212) 849-7100<br>alexspiro@quinnemanuel.com<br><br>*Attorney for Elon Musk* |

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Motion to be filed with the Court's CM/ECF system this 29th day of March, 2022, thereby causing it to be served on all counsel of record.

Dated: New York, New York
March 29, 2022

Respectfully submitted,

/s/ Alex Spiro
Alex Spiro
QUINN EMANUEL
 URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
alexspiro@quinnemanuel.com

*Attorney for Elon Musk*