MANDATE

22-1291
*SEC v. Musk*

1:18-cv-08865-LJL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Aug 09 2023

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of May, two thousand twenty-three.

Present:
    DEBRA ANN LIVINGSTON,
        *Chief Judge*,
    REENA RAGGI,
    MARIA ARAÚJO KAHN,
        *Circuit Judges*.

_____

SECURITIES AND EXCHANGE COMMISSION,

    *Plaintiff-Appellee*,

v.      22-1291

ELON MUSK,

    *Defendant-Appellant*.

_____

| | |
|---|---|
| For Appellee: | JEFFREY A. BERGER, Senior Appellate Counsel (Michael A. Conley, Solicitor, John R. Rady, Appellate Counsel, *on the brief*), *for* Dan Berkovitz, General Counsel, Securities and Exchange Commission, Washington, DC. |
| For Defendant-Appellant: | ELLYDE R. THOMPSON, Quinn Emanuel Urquhart & Sullivan LLP, New York, NY and Washington, DC (Alex Spiro, William A. Burck, Rachel G. Frank, *on the brief*). |

1

MANDATE ISSUED ON 08/09/2023

Appeal from an April 27, 2022, opinion and order of the United States District Court for the Southern District of New York (Liman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Elon Musk ("Musk") appeals from an April 27, 2022, opinion and order of the United States District Court for the Southern District of New York. Musk argues that the district court abused its discretion in denying his motion to modify or terminate a consent decree he entered into with the Securities and Exchange Commission ("SEC"). Musk argues that the consent decree warrants modification both because of changed circumstances and because the decree contains a "prior restraint" that violates the First Amendment; he further contends that he did not validly waive his First Amendment rights in the consent decree and that even if he had, the waiver is unenforceable. He therefore argues that a pre-approval provision should be struck from the consent decree or, alternatively, that the decree should be modified or terminated.

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**I.  Rule 60(b)(5)**

We review a district court's decision on a Rule 60(b) motion for abuse of discretion, granting relief only in "exceptional circumstances." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir. 1994) (internal quotation marks omitted); *see also Sec'y of Hous. & Urban Dev.*, 239 F.3d 211, 216 (2d Cir. 2001).

"Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances," operating as "an exception to finality." *Gonzalez v. Crosby*, 545 U.S. 524, 528–29 (2005). As relevant here, the rule provides that "the court may

relieve a party or its legal representative from a final judgment" where "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). To determine whether a modification or termination is equitable, the movant must first show "either a significant change . . . in factual conditions or in law." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992).[1] Significant changes in factual conditions may warrant equitable relief where (1) "changed factual conditions make compliance with the decree substantially more onerous"; (2) "a decree proves to be unworkable because of unforeseen obstacles"; or (3) "enforcement of the decree without modification would be detrimental to the public interest." *Id.* "Once a moving party has met its burden of establishing either a change in law or in fact warranting modification of a consent decree," the district court must then "determine whether the proposed modification is suitably tailored to the changed circumstance." *Id.* at 391.

Musk argues that the SEC's methods of enforcing the consent decree constitute changed circumstances that have made compliance with it substantially more onerous. We disagree. "Ordinarily, . . . modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." *Id.* at 386. The consent decree Musk entered into with the SEC expressly required his compliance with "procedures implemented by Tesla" regarding corporate communications, including those "made in any format, including, but not limited to, posts on social media (e.g., Twitter)." App'x 44–45. The Tesla communications policy in turn required that covered communications would be subject to a pre-approval process

---

[1] The "flexible standard" adopted by the Supreme Court in *Rufo* made less stringent the test imposed by *United States v. Swift & Co.*, which required "a clear showing of grievous wrong evoked by new and unforeseen conditions." 286 U.S. 106, 119 (1932). Because the parties both apply the *Rufo* standard, we assume without deciding that it applies here, arguably outside its traditional context of institutional reform litigation.

3

such that certain senior executives, including Musk, would not be "authorized to post or publish" without first consulting with Tesla's General Counsel or an in-house securities lawyer. *Id.* at 55. Initially, only tweets "that contain, or reasonably could contain, information material to [Tesla] or its shareholders" were covered. *Id.* at 45. Later, the parties amended the agreement to replace the materiality standard with a list of specified subjects. *See id.* at 231–32. The consent decree also required certification of compliance in the form of written reports and provided that the SEC "may make reasonable requests for . . . evidence of compliance." *Id.* at 45. Musk agreed to "provide such evidence." *Id.* The SEC subpoenas that gave rise to this litigation therefore "actually were anticipated" by Musk. *Rufo*, 502 U.S. at 386.

We see no evidence to support Musk's contention that the SEC has used the consent decree to conduct bad-faith, harassing investigations of his protected speech. To the contrary, the record indicates that the SEC has opened just three inquiries into Musk's tweets since 2018. The first resulted in the consent decree that is the subject of this appeal. *See* App'x 16–17, 31 (tweet in which Musk claimed that he was "considering taking Tesla private at $420" with "[f]unding secured," although Musk had allegedly "not even discussed, much less confirmed, key deal terms, including price, with any potential funding source"); *see also* 15 U.S.C. § 78j, 17 C.F.R. § 240.10b-5 (making it unlawful to "make any untrue statement of a material fact . . . in connection with the purchase or sale of any security"). Two subsequent investigations sought information regarding tweets published in 2019 and 2021. *See* App'x 57–58 (seeking documents regarding tweet that misstated Tesla's annual production of vehicles); *id.* at 232, Confidential App'x 24–25 (seeking documents regarding Twitter poll in which Musk proposed selling 10% of his Tesla stock, an "event[] regarding [Tesla's] securities (including Musk's acquisition or disposition of the Company's securities)"); *see also id.* at 27–28 (describing legal justifications for investigating the

4

transactions). Each tweet plausibly violated the terms of the consent decree. *See Kozlowski v. Coughlin*, 871 F.2d 241, 245 (2d Cir. 1989) (explaining that it is "the parties' consent [that] animates the legal force of a consent decree" (internal quotation marks and citation omitted)). Accordingly, the SEC made a "reasonable request" for information in order to investigate Musk's compliance with the decree, as provided for in the parties' agreement. Whether or not the consent decree may have "provide[d] broader relief than the court could have awarded after a trial" does not detract from the SEC's ability to enforce the agreement Musk voluntarily signed, the terms of which plainly "[came] within the general scope of the case made by the pleadings" and "further[ed] the objectives of the law upon which the complaint was based." *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525 (1986). And even if we agreed that any factual conditions had changed outside the contemplation of the parties—which we do not—the SEC's limited, appropriate inquiries in this case have not made compliance with the consent decree "substantially more onerous" than could have been reasonably anticipated when Musk agreed to the consent decree's terms. *Rufo*, 502 U.S. at 384. "The exercise of equity . . . does not permit a court to indulge a party's discontent over the effects of its bargain." *Kozlowski*, 871 F.2d at 246.

Nor does the public interest require modification of the consent decree. If anything, it cuts in the other direction, given the importance of the public's interest in the enforcement of federal securities laws and because "[o]ur Court recognizes a 'strong federal policy favoring the approval and enforcement of consent decrees.'" *SEC v. Citigroup Glob. Markets, Inc.*, 752 F.3d 285, 293 (2d Cir. 2014) (quoting *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991)). We conclude

5

therefore that the district court was well within its sound discretion to deny Musk's motion to modify the terms of the consent decree.[2]

**II.     Waiver**

Musk's argument that the consent decree is effectively a "prior restraint" on his speech does not change this conclusion.  Parties entering into consent decrees may voluntarily waive their First Amendment and other rights.  See *SEC v. Romeril*, 15 F.4th 166, 172 (2d Cir. 2021).  Indeed, every consent decree by definition involves waiver of the right to trial, which saves the parties "the time, expense, and inevitable risk of litigation."  *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971).  Had Musk wished to preserve his right to tweet without even limited internal oversight concerning certain Tesla-related topics, he had "the right to litigate and defend against the [SEC's] charges" or to negotiate a different agreement—but he *chose* not to do so.  *Romeril*, 15 F.4th at 172.  Having made that choice, he may not use Rule 60 to collaterally re-open a final judgment merely because he has now changed his mind.[3]  We express no view as to the substance of his underlying First Amendment claims.

\*     \*     \*

---

[2] It follows that the district court also acted within its discretion to deny Musk's motion to terminate the decree altogether, an argument Musk appears to have abandoned on appeal.  Musk in any event makes no showing that the objective of the consent decree "has been achieved," nor that a "durable remedy has been implemented" such that "continued enforcement of the order is not only unnecessary, but improper."  *Horne v. Flores*, 557 U.S. 433, 450 (2009); *see also United States v. Eastman Kodak Co.*, 63 F.3d 95, 101 (2d Cir. 1995) (requiring that a movant show that the "basic purposes of the consent decrees . . . have been achieved").

[3] Musk also argues that any waiver of his First Amendment rights is unenforceable. Having not made that argument before the district court, Musk has forfeited it.  *See United States v. Jones*, 565 U.S. 400, 413 (2012).

6

We have considered Defendant-Appellant's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit